CHARLES ORICKS *v.* STATE OF INDIANA.

[No. 677S456. Filed July 20, 1978.]

*William G. Smock,* of Terre Haute, *William Teeguarden,* of Terre Haute, for appellant.

*Theodore L. Sendak,* Attorney General, *J. Roland Duvall,* Deputy Attorney General, for appellee.

DeBruler, J.—Appellant was convicted of first degree murder, Ind. Code § 35-13-4-1 (Burns 1975) repealed October 1, 1977. On appeal he raises five issues:

(1) sufficiency of the evidence of appellant's capacity to form the mental states comprising elements of first degree murder;

(2) denial of a mistrial after allegedly improper remarks by the prosecutor in closing argument;

(3) excusing by the trial court of three college students and a college instructor from the panel of prospective jurors;

(4) failure of the reporter's recording equipment to record all of the trial testimony; and

(5) denial of a mistrial after the prosecutor informed the prospective jurors during voire dire that appellant would be eligible for parole if convicted.

The facts giving rise to appellant's conviction are as fol-

lows. Appellant and his wife Linda Oricks separated in early October, 1976, over differences arising from appellant's abuse of alcohol and inability to maintain employment. Appellant stayed at his grandparents' home. On the evening of October 23, 1976, Mrs. Oricks brought appellant's infant son to visit appellant, according to the informal visitation arrangements which the couple had observed during the separation. During the visit appellant and his wife argued over appellant's suggestion that they reunite. Appellant picked up a shotgun, pointed it at Mrs. Oricks' face, and pulled the trigger. When the weapon failed to fire appellant loudly asked where the shells were. Mrs. Oricks retreated to her automobile; appellant followed her, released the air from its tires, and again threatened to shoot her. Mrs. Oricks called the sheriff from a neighbor's house, and two deputies were dispatched to take Mrs. Oricks and her child home.

The next day, Mrs. Oricks returned to appellant's grandparents' home with her mother. Mrs. Martha Collins, and one Roland Hudson, the former husband of a friend of Mrs. Oricks, to retrieve the disabled vehicle. While Mrs. Oricks and Mr. Hudson were removing their tire tools from the trunks of their cars appellant appeared on the porch with the shotgun and fired at them. Mrs. Oricks was struck and wounded by one of the first shots; Mrs. Collins was shot and killed as she tried to aid her daughter. A neighbor saw appellant reload the shotgun, walk down to Mrs. Collins and his wife as they lay on the ground, and fire it at one of the women at close range. Eight to ten shots were fired altogether, from a six-shot shotgun. After the shooting appellant walked by Mrs. Oricks and told her that she "deserved what she got." Mrs. Collins' death resulted from a severe wound of the head caused by a shotgun blast.

## I.

Appellant challenges the sufficiency of the evidence of premeditation and of "specific intent to kill." These mental states

which appellant contends he could not form are two attributes of the element of the offense of first degree murder denominated "premeditated malice, which is often defined as follows:

> "In order that there may be such premeditated malice as will make a killing murder in the first degree, the thought of taking life must have been consciously conceived in the mind, the conception must have been meditated upon, and a deliberate determination formed to do the act. Where the homicide has been preceded by a concurrence of will, with an intention to kill, and these are followed by deliberate thought or premeditation, although they follow as instantaneous as successive thoughts can follow each other, the perpetrator may be guilty of murder in the first degree." *Everett* v. *State*, (1934) 208 Ind. 145, 149-150, 195 N.E. 77, 79; *James* v. *State*, (1976) 265 Ind. 384, 354 N.E.2d 236, 241-42.

At trial appellant presented evidence that at the time of the slaying he was drunk, in a state of emotional anguish, an alcoholic, incapable of exercising control over his impulses and unable to form the intent to commit murder or to premeditate on that intent. The purpose of presenting this evidence was to persuade the jury that he had not, in fact, at the time of the slaying, entertained a purpose and an intention to shoot and kill Mrs. Collins or a predemitated malice, and should therefore be found not guilty as charged. The jury nevertheless returned a verdict of guilty. In the appeal before us, appellant has drawn our attention to this same body of evidence. The manifest purpose of doing so is to support his appellate claim that his conviction should be reversed on insufficiency grounds. We cannot set aside a jury verdict because of the presence of such exculpatory evidence, but only upon the absence of substantial evidence of probative value upon one or more of the essential elements of the offense of which the appellant stands convicted. *Horton* v. *State*, (1976) 265 Ind. 393, 354 N.E.2d 242. Having considered the evidence supporting the verdict, including appellant's actions and verbal conduct leading up to and at the

time of the shooting, and immediately thereafter while in custody of the police, we are led to the conclusion that the jury was warranted in inferring beyond a reasonable doubt that appellant did, on the occasion of the offense charged, in fact hold in his mind the purpose and intent to shoot and kill Mrs. Collins and did premeditate upon such thought. The strong and persuasive evidence so formidably arrayed before the jury by the defense that appellant could not and did not form these requisite mental states was for the jury to consider, and it was within the province of that body to interpret it and assess its weight in its decision making process, *Shackelford v. State*, (1976) 264 Ind. 698, 349 N.E.2d 150.

## II.

During final argument the prosecuting attorney made the following statements:

"That's the law . . . right there. You have a choice. Your choice is either the law . . . or it's the gun.

\* \* \*

"And, I ask you that if we are going to protect life, we're going to protect that which is the dearest thing to us, and [sic], I ask you to do your duty. It's not easy. . . ."

Appellant interjected his objection to the first remark and the trial judge instructed the jury to disregard it. The second comment was made at the close of the prosecutor's final statement, and appellant objected after the jury was excused. Appellant moved for and was denied a mistrial.

In determining whether the trial court properly refuses a mistrial upon the basis of assertedly improper remarks by the prosecuting attorney, the reviewing court first determines whether the prosecutor's conduct was in fact improper, then considers whether any impropriety found subjects the accused to "grave peril to which he should not be subjected." *Maldonado v. State*, (1976) 265 Ind. 492, 355 N.E.2d 843, 848.

The first statement referring to the law or the gun was improper in that it could easily be misunderstood by the jury

as calling for the jury to convict the accused regardless of his guilt. *Maldonado* v. *State, supra.* The trial court properly admonished the jury to disregard the remark and we are unable to say that its prejudicial content was so great as to place appellant in grave peril notwithstanding the admonition.

The second statement does not invite the jurors to convict for reasons other than guilt, but simply urges them to perform a difficult duty. This argument was not improper.

## III.

The trial court on its own motion excused three prospective jurors who were students at Indiana State University and another who was a teacher at that school, because of final examinations. One student who had completed her finals did serve as a juror. The three students and one professor excused were the only college teachers and students in the regular panel, but a supplemental venire was summoned on the second day of voir dire. It does not appear from the record how many of these prospective jurors may have been college students.

Appellant argues that the excusing of the four prospective jurors constituted a "systematic exclusion" of college professors and students from the panel from which appellant's jury was selected, which deprived appellant of a jury chosen from a fair cross section of the community in which he was tried, in contravention of the Sixth Amendment. Although the record does not reveal how many teachers and students were ultimately summoned for jury duty in appellant's prosecution, we will assume as do the parties that three out of four students summoned were excused, as was the only professor called.

The Sixth Amendment guarantee of trial by jury requires that juries be selected from fair cross sections of their communities, and is violated by the systematic exclusion of distinctive groups of community members. *Taylor*

.v. *Louisiana,* (1975) 419 U.S. 522, 530, 538, 95 S.Ct. 692, 697-98, 705, 42 L.Ed.2d 690. However, this does not mean that courts may not grant excuses from jury service.

> "The states are free to grant exemptions from jury service to individuals in case of special hardship or incapacity and those engaged in particular occupations the uninterrupted performance of which is critical to the community's welfare. Rawlins v. Georgia, 201 U.S. 638, 26 S.Ct. 560, 50 L.Ed. 899 (1906)." *Taylor* v. *Louisiana, supra* at 419 U.S. 534, 95 S.Ct. 700.

See also *Brown* v. *State,* (1977) 266 Ind. 82, 360 N.E.2d 830, 838-39 (separate opinion of DeBruler, J., dissenting).

Here the trial court excluded from the panel only those members for whom service would constitute a special and undue hardship: interference with an important event in their college education (in the professor's case, an important event in his academic duties). Appellant argues that his interest in being able to select young, educated jurors outweighs any hardship to the excused persons. We do not perceive that *Taylor* mandates such a balancing test; the interest of appellant which the Sixth Amendment protects is that identifiable segments of the population not be excluded, not that any particular group be represented. "Defendants are not entitled to a jury of any particular composition." 419 U.S. at 538, 95 S.Ct. at 702. *See e.g. United States* v. *Test,* (10th Cir. 1976) 550 F.2d 577, 595 (upholding automatic excusing of sole proprietors of businesses and mothers of young children). Appellant's right to a jury selected from a fair cross section of his community was not infringed by the excusing of these prospective jurors.

## IV.

During trial the court reporter's recording equipment malfunctioned and the testimony of several witnesses was not recorded. These witnesses appear to have been the coroner and three police officers. Appellant contends that his inability to have the entirety of the evidence transcribed denied him

due process of law by frustrating appellant's efforts to present a full record on appeal.

Indiana R.Ap. P. 7.2(A)(3)(c) provides that if evidence or proceedings in the trial court are not reported or cannot be transcribed, either party may prepare a statement of the evidence in accordance with that rule. The Court has recently held in *Ruetz* v. *State,* (1978) 268 Ind. 42, 373 N.E.2d 152, that the remedy provided by Rule 7.2 replaces the traditional grant of a new trial for the unavailability of a transcript, and that such substitution does not deny the appellant due process. Appellant relies on authority from the federal courts, which until recently retained the traditional new trial rule, and are not applicable here.

## V.

During voir dire examination of prospective jurors by the State a member of the panel inquired of the prosecutor:

"[Juror]:     When you speak of life imprisonment, uh
              —is there not an eligibility of parole. . . .
[Mr. Kearns]: Absolutely."

Immediately after this exchange, court recessed and appellant objected to the prosecutor's remark outside the presence of the jury. After court reconvened the court admonished the jury:

"Now, members of the jury, shortly before recess, one question was asked by a member of the jury panel to the prosecutor and his answer was—I'm not going to repeat the answer because I don't want to emphasize it. Now, if there is any provision for parole on a life sentence, I do not know—I do not know of it. But, be that as it may, the prosecutor did not inject that particular item into the conversation, that was in response to what I would consider perfectly normal question that anyone might have. . . . however, whether or not a person is entitled to parole, or whether or not parole . . . is available for anybody . . . is not an issue here. If it's possible at all, it's not within the control of any person in this courtroom at any time, so uh—the—all persons here are admonished to avoid any consideration that —even a remote possibility of parole in considering the

primary issue—is the defendant guilty or is he not guilty—based upon the evidence brought forth at the trial."

Upon defense counsel's request for further admonition that appellant was not "absolutely entitled" to parole, the court continued:

"One further comment . . . even if there would be a possibility of parole, it certainly would not be an absolute right of any defendant. And, I might say, all attorneys are also admonished not to . . . mention the word."

The trial court overruled appellant's request for a mistrial. Appellant argues on appeal that the mention of parole deprived him of a fair trial. We do not believe that the word "parole" has such prejudicial force that its mention renders a fair trial thereafter impossible.

In *Feggins* v. *State*, (1977) 265 Ind. 674, 359 N.E.2d 517, 522-25, this Court considered the procedure to be followed when a prospective juror raises an inquiry concerning parole or other sentence diminution procedures. We affirmed that the contingencies affecting the actual length of sentence served are not proper matters for jury consideration, and held that when the question of such contingencies arises, the court should instruct the jury that the actual length of sentence the accused will serve cannot be determined at the time of trial and should not be considered or speculated upon by the jurors. Although *Feggins* had not been decided when appellant was tried, the special judge instructed the jury in a manner fully consistent with our decision therein. The trial court could properly deny, therefore, appellant's motion for mistrial.

Appellant's conviction is affirmed.

Givan, C.J., Hunter, Prentice and Pivarnik, JJ., concur.

NOTE.—Reported at 377 N.E.2d 1376.