**Thomas AUBREY, Appellant (Petitioner Below),**

v.

**STATE of Indiana, Appellee (Respondent Below).**

No. 883S286.

Supreme Court of Indiana.

May 29, 1985.

Robert W. Hammerle, Joseph P. Maguire, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Petitioner (Appellant) was convicted of first degree murder and was sentenced to life imprisonment. His conviction was affirmed by this Court in *Aubrey v. State* (1974), 261 Ind. 531, 307 N.E.2d 67. Petitioner subsequently sought post-conviction relief; however, following hearings on June 30, 1982, August 4, 1982, and March 1, 1983, his petition was denied. His appeal from the denial of post-conviction relief presents two issues for our review, as follows:

(1) Whether he was denied his Sixth Amendment right to the effective assistance of counsel;

(2) Whether he was denied due process of law because the Prosecutor failed to disclose promises made by him to the State's sole eyewitness.

Our review is governed by the following standard:

"Petitioner ha[s] the burden of proof and stands in the shoes of one appealing from a negative judgment. The trial judge, as trier of the facts, is the sole judge of the weight of the evidence and the credibility of the witnesses. It is only where the evidence is without conflict and leads to but one conclusion, and the trial court has reached an opposite conclusion, that the decision will be disturbed as being contrary to law." (citations omitted).

*Neville v. State* (1982), Ind., 439 N.E.2d 1358, 1360.

### ISSUE I

First, Petitioner contends that his representation was inadequate because of a conflict of interest on the part of his trial attorney, Mr. Erbecker, who was the former husband of the State's first witness, the mother of the victim of the crime. Petitioner contends that because of his attorney's relationship with this witness, he did not effectively cross-examine her.

■ Petitioner refers us to numerous cases in which courts have held that defendants were denied the effective assistance of counsel because their attorneys had a conflict of interest, inasmuch as they represented codefendants or represented both the defendant and a prosecution witness. *See, e.g., Cuyler v. Sullivan* (1980), 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333; *Ross v. Heyne* (7th Cir.1980), 638 F.2d 979; *Castillo v. Estelle* (5th Cir.1974), 504 F.2d 1243. In order to show a Sixth Amendment violation it is necessary that a defendant, who made no objection at trial, show that his counsel " 'actively represented conflicting interests' and establish that this adversely affected his lawyer's performance." *Smith v. State* (1984), Ind., 465 N.E.2d 1105, 1119, *quoting Cuyler v.*

*Sullivan*, 446 U.S. at 350, 100 S.Ct. at 1719, 64 L.Ed.2d at 347.

The situation in the case at bar is readily distinguishable from those cases cited by the Petitioner. Here, there is nothing which suggests that defense counsel "represented" his former wife in any way. Moreover, her sole function as a prosecution witness was to identify State's Exhibit No. 1, a photograph, as her son, the decedent. She did not in any way implicate the Petitioner as the perpetrator of the crime. When defense counsel attempted to cross-examine the witness regarding her son's police record and involvement in "holdups," the State's objection, grounded upon such line of questioning being beyond the scope of direct examination, was sustained. Hence, counsel's cross-examination of the witness was limited, not because of his relationship with the witness but because of the scope of the direct examination.

■ We agree with the conclusion of the post-conviction court that Petitioner failed to establish that a conflict of interest adversely affected his lawyer's performance.

Petitioner further contends that he was denied the effective assistance of counsel in that his attorney "presented only a superficial case regarding [his] temporary insanity at the time of the crime." Specifically, he claims that his attorney failed to obtain medical records from Norman Beatty Hospital which were favorable to his defense and failed to subpoena witnesses to testify regarding his mental state at the time of the crime.

Following Petitioner's arrest in September, 1970, he filed a "Verified Suggestion of Incompetency to Stand Trial." The trial court then appointed two psychiatrists to examine him, and, as a consequence of the examinations and reports, the trial court found that he was not then competent to stand trial and committed him to the Department of Mental Health. In 1972, the trial court received a report from the staff of Norman Beatty Hospital which indicated that the Petitioner was then competent to stand trial. Prior to the trial, two psychiatrists again examined the Petitioner, and

the trial court determined that he was competent to stand trial.

At trial, Petitioner presented two defenses, self-defense and insanity. The only witness called by the defense relevant to the insanity defense was Petitioner's sister who testified that her brother had been at Norman Beatty Hospital for psychiatric treatment and that two and one-half years earlier, she had attempted to have him institutionalized at a hospital in Lexington, Kentucky. Following the presentation of both the State's and Defendant's cases, the two court-appointed psychiatrists testified that, in their opinions, Petitioner was sane at the time of the crime. Defense counsel vigorously cross-examined both of these doctors.

At the hearing on the petition for post-conviction relief, Petitioner called Dr. Gaines, a clinical psychologist who had worked at Norman Beatty Hospital from 1967 to 1975 and who had examined the Petitioner in 1971. Gaines' testimony and the records which were introduced through him indicated that at the time the Petitioner was at Norman Beatty Hospital, he was mentally ill. Also testifying at the post-conviction hearing were Petitioner's two sisters who stated that Petitioner, at the time of the crime, had been involved with drugs and had undergone some personality changes. They further testified that when they had visited him at Beatty Hospital, he was mentally unstable. One of the sisters also testified that a family doctor, Dr. Szynal, could have testified at trial about the Petitioner's mental state at the time of the crime, but that defense counsel never called him as a witness. Finally, she testified that Petitioner had received Social Security disability payments from 1972 to 1982 because of his mental illness.

■ In determining whether a defendant has been denied the effective assistance of counsel, the reviewing court must determine whether, in light of all the circumstances, the acts or omissions of which a defendant complaints are outside "the wide range of professionally competent assistance." *Strickland v. Washington*

(1984), —— U.S. ——, ——, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674, 695; *Lawrence v. State* (1984), Ind., 464 N.E.2d 1291, 1294. A strong presumption exists that counsel rendered adequate legal assistance. *Id.* Even if a defendant establishes that his attorney's acts or omissions were outside the wide range of competent professional assistance, he must also establish that counsel's errors had an adverse effect upon the judgment. *Strickland v. Washington*, 104 S.Ct. at 2067, 80 L.Ed.2d at 696; *Lawrence v. State*, 264 N.E.2d at 1294. Moreover, it is not necessary for the reviewing court to "address both components of the inquiry if the Defendant makes an insufficient showing on one" or to "determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland v. Washington*, 104 S.Ct. at 2069–2070, 80 L.Ed.2d at 699; *Kruckeberg v. State* (1984), Ind., 465 N.E.2d 1126, 1129.

■ In this case, Petitioner has failed to show that he was harmed by his attorney's failure to investigate more thoroughly or to call additional witnesses with regard to his insanity defense. He presented no evidence at the post-conviction hearing that he had been insane at the time of the crime. The evidence presented by Dr. Gaines, though voluminous and substantial, was limited to his mental condition during his two years at Norman Beatty Hospital. Although such evidence might have had a bearing on his mental condition prior to his commitment there, it is not so persuasive that we can say that Petitioner was harmed by his counsel's failure to produce such evidence at trial. For all we know, had Dr. Gaines been asked, he might have expressed the opinion that Petitioner was sane at the time of the crime. As to Dr. Szynal, we cannot know what his testimony would have been had he been called as a witness at trial.

Petitioner failed to meet his burden of proof on this issue.

## ISSUE II

Relying upon *Napue v. Illinois* (1959), 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 and *Giglio v. U.S.* (1972), 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104, Petitioner claims that he was denied due process of law because the Prosecutor failed to disclose promises that had been made by him to the State's sole eyewitness, David Lane. At trial, defense counsel asked Lane several times if he had been promised anything in exchange for his testimony, and each time Lane responded that he had not.

At the hearing on the petition for post-conviction relief, the prosecutor, Dale Little, testified that he went to the Marion County Jail about one week before Petitioner's trial to interview Lane and that during that interview, Lane expressed concern about his upcoming review before the Parole Board. Little testified that he told Lane that he could not discuss this matter before the trial but that he would talk to him after the trial, if he (Lane) then so desired. Later, after Lane had testified, he again talked to him and agreed to write a letter upon his behalf to the Parole Board. When specifically asked whether he had promised Lane that he would write a letter to the Parole Board in exchange for his testimony or that he would assist him in any way, Little responded, "Absolutely not."

The case of *Deatrick v. State* (1979), 181 Ind.App. 469, 392 N.E.2d 498, upon which Petitioner relies, is distinguishable from the case at bar. In *Deatrick*, at the hearing on the motion to correct errors, the parties stipulated that the prosecutor, who was then unable to testify, would have testified that *prior* to trial he told the witness that if he would testify against the defendant, he would not object to the witness' parole and would write a letter in favor of parole. *Deatrick v. State*, 392 N.E.2d at 499. Here, Prosecutor Little testified that he had told Lane that he could not discuss the issue until after the trial. Hence, Lane had responded truthfully to defense counsel's questions, and there was nothing the Prosecutor was required to reveal.

 The post-conviction court was the judge of the weight of this evidence. It did not, as a matter of law, compel the conclusion that the witness had lied when he testified that no promise had been made to him in exchange for his testimony or that the Prosecutor had made any representation, directly or by inference, that he was required to disclose. Hence, we cannot disturb the post-conviction court's conclusion that Petitioner failed to carry his burden of proof.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER and PIVARNIK, JJ., concur.

HUNTER, J., not participating.