**Douglass E. THOMPKINS, Appellant
(Petitioner Below),**

v.

**STATE of Indiana, Appellee
(Respondent Below).**

No. 883S292.

Supreme Court of Indiana.

Sept. 17, 1985.

Susan K. Carpenter, Public Defender, Paul Levy, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Latr[i]alle Wheat, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Following a jury trial, Petitioner (Appellant) was convicted of murder and felony murder, Ind.Code § 35–13–4–1 (Burns Code Ed., 1975), commission of a felony while armed, Ind.Code § 35–12–1–1 (Burns Code Ed., 1975), assault and battery with intent to kill, Ind.Code § 35–13–2–1 (Burns Code Ed., 1975), and infliction of physical injury during robbery, Ind.Code § 35–13–4–6 (Burns Code Ed., 1975). The trial judge entered judgment on both murder convictions, sentenced Petitioner to life imprisonment upon each count, and withheld judgment on the remaining counts. On direct appeal this Court merged the murder convictions and instructed the trial court to vacate one of the life sentences, but affirmed the trial court in all other respects. *Thompkins v. State* (1978), 270 Ind. 163, 383 N.E.2d 347 (DeBruler, J., dissenting without opinion).

Petitioner subsequently filed the instant petition for post-conviction relief under Ind. Rules of Procedure, Post Conviction Rule 1. Following an evidentiary hearing the post-conviction court denied the petition, and Petitioner now appeals. We have restated his various contentions as the following five (5) issues:

(1) Whether Petitioner was provided with the effective assistance of counsel in that counsel's performance was affected by conflicts of interest.

(2) Whether Petitioner was denied the effective assistance of counsel in that counsel did not raise and preserve issues stemming from voir dire examination of the prospective jurors.

(3) Whether Petitioner was deprived of due process of law by a comment made by the trial judge during the proceedings.

(4) Whether Petitioner was denied the effective assistance of counsel in that counsel did not raise and preserve for direct appeal an incident of alleged prosecutorial misconduct.

(5) Whether Petitioner was denied the effective assistance of counsel in that counsel did not object to the verdict forms provided the jury.

We affirm the denial of post-conviction relief.

The evidence presented at trial demonstrated that Petitioner was involved in a robbery at an Indianapolis restaurant, during which one patron was killed and another wounded. At trial and on direct appeal Petitioner was represented by an attorney who was subsequently convicted of criminal charges and disbarred. Other facts are stated below.

### ISSUE I

Petitioner contends that the post-conviction court erred in not finding that Petitioner received inadequate assistance by trial-appellate counsel. This contention relates to several issues raised in this appeal, but before addressing them we note the standards of review we apply to this case.

Under Post Conviction Rule 1:

"Petitioner has the burden of proof and stands in the shoes of one appealing from a negative judgment. The trial judge, as trier of the facts, is the sole judge of the weight of the evidence and the credibility of the witnesses. It is only where the evidence is without conflict and leads to but one conclusion, and the trial court has reached an opposite conclusion, that the decision will be disturbed as being contrary to law."

*Mosley v. State* (1985), Ind., 477 N.E.2d 867, 868; *see also Neville v. State* (1982), Ind., 439 N.E.2d 1358, 1360 and authorities cited.

Moreover, our appellate courts now review general claims of ineffective assistance of counsel under the two-step test articulated by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and integrated into Indiana caselaw beginning with *Lawrence v. State* (1984), Ind., 464 N.E.2d 1291, 1294–97.

"Under the first step, or 'performance component,' the defendant must demonstrate that the alleged acts or omissions by counsel fell outside the wide range of professionally competent assistance. If the defendant satisfies step one of the test, he then must establish the second step, or 'prejudice component,' under which the defendant will be entitled to relief only if the reviewing court determines that counsel's errors had an adverse affect upon the judgment." (Citations omitted.)

*Richardson v. State* (1985), Ind., 476 N.E.2d 497, 501. The *Strickland* Court emphasized that "there is no reason for a court deciding an ineffective assistance claim to ... address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland,* 466 U.S. at ——, 104 S.Ct. at 2069, 80 L.Ed.2d at 699.

However, in cases raising claims of ineffective counsel due to conflicts of interest, the *Strickland* Court retained the standard for relief posited in *Cuyler v. Sullivan* (1980), 446 U.S. 335, 349–50, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333, 347:

"Thus, a defendant who shows that a conflict of interest *actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief....* But until a defendant shows that his counsel *actively repre-*

*sented conflicting interests*, he has not established the constitutional predicate for his claim of ineffective assistance." (Emphasis supplied.)

See *Strickland*, 466 U.S. at ——, 104 S.Ct. at 2067, 80 L.Ed.2d at 696. With these standards in mind, we turn to Petitioner's specific contentions in this case.

■ Petitioner raises two contentions alleging that trial counsel was ineffective due to conflicts of interest. He first argues that because counsel was himself facing possible criminal charges and disciplinary action, he could not have provided a vigorous defense against the same prosecutors who were investigating him. Petitioner seems to reason that counsel, in order to receive favorable treatment upon his own pending charges, would not have waged a vigorous defense on behalf of his clients facing criminal charges.

However, Petitioner's counsel testified during the post-conviction hearing that he had represented many criminal defendants while his own legal problems were pending. He specifically denied that these problems affected such representation. Furthermore, the post-conviction court found that counsel had conducted thorough discovery, made various motions and filed a notice of alibi, objected to procedures undertaken by the State, and otherwise competently represented Petitioner. Moreover, the record revealed that counsel filed a motion to correct errors raising a series of appropriate contentions, and pursued issues on direct appeal which this Court, although affirming one murder conviction, found had substantial merit. There simply is no substantial evidence in this record that counsel's performance was "affected" by his pending legal problems, or that counsel did not conduct a vigorous defense.

■ Petitioner presents a second conflict of interest question concerning counsel's cross-examination of State's witness King. Ms. King gave certain testimony corroborating testimony given by Petitioner's accomplice Crombaugh, the principal prosecution witness. Counsel was a close friend of Ms. King and her family. Petitioner maintains that he asked counsel to cross-examine Ms. King on the testimony in question, but counsel stated that he had promised Ms. King's mother that he would "take it easy" on her. However, trial counsel testified during the post-conviction proceeding that he was aware Ms. King would attempt to assist Petitioner by her testimony, that, if he proceeded with detailed cross-examination, the State would be able to elicit further information which could damage Petitioner's case, and that he, therefore, determined to conclude her cross-examination as quickly as possible, limiting it to the matters concerning which she had testified in the direct examination by the prosecutor.

This Court will not reweigh this evidence. The post-conviction court was presented with testimony that counsel's cross-examination of Ms. King had been based on trial strategy, not on his acquaintance with her and her family. Petitioner has not demonstrated that his counsel's performance was "affected" by conflicts of interest. *Cuyler.* Accordingly, he has not demonstrated his entitlement to relief.

### ISSUE II

Petitioner argues that he was denied the effective assistance of counsel inasmuch as counsel did not preserve and raise alleged errors during voir dire examination of the prospective jurors. We conclude that Petitioner has failed to establish that he was "prejudiced" by counsel's errors, if any, under the "prejudice component" of the *Strickland* test.

To sustain his first claim under this issue, Petitioner charges that his attorney failed to preserve and pursue an allegation that the jury venire had been irreparably biased by a comment by a venireman. We do not agree.

■ Petitioner is black. During voir dire examination, one of the veniremen stated that he could not be impartial toward a black defendant because he had been assaulted the previous evening by two black people. This prospective juror was excused for cause, but Petitioner insists

that the entire venire was tainted by the comment. There is no merit to this contention. Petitioner presented no evidence during the post-conviction proceeding that other members of the venire were prejudiced by the comment.

Petitioner secondly claims that, because persons older than sixty-five (65) years were excluded from the jury venire, the jury was not selected from a fair cross-section of the population. Petitioner has failed to establish this contention.

Ind.Code § 33–4–5–7 (West 1983), current provision Ind.Code § 33–4–5–7(a) (West 1984–85 Cum.Supp., Burns 1985 Repl.), provides, in pertinent part, that persons who are older than sixty-five (65) years and who desire to be excused for such reason shall be excused from acting as jurors. Testimony at the post-conviction hearing revealed that several prospective jurors were excused under authority of such statute.

Petitioner relies upon the United States Supreme Court's decisions in *Taylor v. Louisiana* (1975), 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690, and *Duren v. Missouri* (1979), 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579. In both such cases, the Court declared that the right to a jury trial under the Sixth Amendment encompasses the requirement that the jury be selected from a venire representing a fair cross-section of the community. Both cases involved state practices which exempted a substantial number of women from jury duty, which the Court found violated the Sixth Amendment. In *Duren*, however, Justice White went on to articulate a three-part test to govern similar claims. A defendant must show that:

1. The group alleged to be excluded is a "distinctive" group in the community.

2. The representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and

3. This underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Id.*, 439 U.S. at 364, 99 S.Ct. at 668, 58 L.Ed.2d at 587.

Assuming, for sake of argument, that persons older than sixty-five (65) are a "distinctive" group in Marion County, where Petitioner was tried, he has made no showing, either at trial or during the post-conviction proceeding, that as a result of the statutory exemption the representation of older persons in jury venires "is not fair and reasonable in relation to the number of such persons in the community." Moreover, the *Duren* Court stated:

"(I)t is unlikely that *reasonable* exemptions, such as those based on special hardship, incapacity, or community needs, 'would pose substantial threats that the remaining pool of jurors would not be representative of the community.'" (Citation omitted and emphasis supplied.)

*Id.*, 439 U.S. at 370, 99 S.Ct. at 671, 58 L.Ed.2d at 590–91. And Justice DeBruler noted in *Oricks v. State* (1978), 268 Ind. 680, 687, 377 N.E.2d 1376, 1380:

"(T)he interest of appellant which the Sixth Amendment protects is that identifiable segments of the population not be excluded, not that any particular group be represented."

In *Baum v. State* (1976), 264 Ind. 421, 423, 345 N.E.2d 831, 832–33, the Court rejected a similar contention with respect to persons over sixty-five (65) years being excluded from grand jury duty, stating that it did not view the exclusion of a particular group as being arbitrary, if there is some logical reason for such exclusion.

Both *Taylor* and *Duren* relied heavily upon statistical evidence of extreme underrepresentation of women on jury panels. *Taylor*, 419 U.S. at 524, 531, 534, 95 S.Ct. at 694–95, 698, 699–700, 42 L.Ed.2d at 694, 698, 700; *Duren*, 439 U.S. at 359, 362–63, 364–67, 99 S.Ct. at 666, 667–68, 669–70, 58 L.Ed.2d at 583–84, 585–86, 587–88. Equivalent evidence in support of Petitioner's

contention upon this issue was not presented to the post-conviction court.

Because Petitioner has failed to show that he was "prejudiced" by counsel's decisions not to raise these issues at trial or upon direct appeal, he has not demonstrated that he is entitled to post-conviction relief upon these assignments.

## ISSUE III

■ Petitioner claims that he was deprived of due process of law by a comment made by the trial judge to the jury. When the State was about to call its final witness in its case in chief, the judge stated "(w)e're now ready to proceed on the final stage of our case." Petitioner contends that, by this statement, the trial judge suggested to the jury that the defense "stage" of the trial was not important for them to consider. Such inference cannot reasonably be drawn from the comment.

## ISSUE IV

■ On direct appeal, counsel argued vigorously that Petitioner had been deprived of due process of law by prosecutorial misconduct. This Court found substantial merit to the claim of prosecutorial misconduct and stated that "(s)uch comments come perilously close to conduct for which a conviction will be reversed." *Thompkins*, 270 Ind. at 168, 383 N.E.2d at 350.

Petitioner now contends that had another comment made by the prosecutor during final argument been presented and considered as part of the prosecutorial misconduct claim made on direct appeal, it would have tipped the scale in his favor and established the necessity of a new trial. It is Petitioner's claim that counsel's failure to have the record of final arguments transcribed also contributed to the denial of due process, in that the misconduct claim was not adequately presented. We again apply the "prejudice component" of the *Strickland* test, and again conclude that Petitioner has not established his entitlement to relief.

The comment referred to in this assignment strongly suggested that Petitioner's accomplice, who had testified as a result of a plea bargain, would be afraid to testify falsely, lest he and Petitioner end up in the same penal institution, in which event Petitioner might kill him. We are not persuaded that the disclosure of this remark on the first appeal would have "tipped the scale."

## ISSUE V

■ Petitioner also contends that trial counsel's failure to object to the verdict forms provided to the jury was also a denial of effective representation. Apparently the jury was provided with sixteen (16) verdict forms encompassing the five principal charges and the lesser-included offenses, and one general "not guilty" form. Petitioner argues that:

"The effect was to confine the jury to those forms and lead them to believe that they had to find Petitioner either guilty of all charges or innocent. They were not given the chance to find him not guilty of some charges *and* innocent of others." (Emphasis in original.)

Brief of Appellant, at 35. Petitioner seems to suggest by this argument that the jury should have been provided with reciprocal verdict forms for each principal or lesser-included offense available for their consideration. We do not agree.

The verdict forms clearly related to individual charges or lesser included offenses, and were to be returned only if the jury found Petitioner guilty of one or more of such offense. The fact that the jury returned but five verdict forms, one on each of the principal charges, demonstrates that they understood this procedure. Moreover, considering the gravity of the principal charges, counsel may well have decided, as a matter of trial strategy, to accept the verdict forms and thereby enhance the possibility of receiving guilty verdicts upon one or more of the lesser-included offenses, rather than on the offense charged. At any rate, we are aware of no authority, and Petitioner cites us to none, holding that

reciprocal verdict forms must be provided for each charge submitted for a jury's consideration.

The judgment denying post-conviction relief is affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and SHEPARD, JJ., concur.