**Carson TATE and Lester Mitchell, Appellants (Defendants Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 2–385A85.**

Court of Appeals of Indiana, Second District.

Dec. 3, 1987.

Rehearing Denied Jan. 13, 1988.

Andrew P. Sheff, Bennett & Sheff, Indianapolis, for appellants.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

1. IC 35–43–4–2 (Burns 1985). Both Mitchell and Tate were found guilty of theft as a class D felony. However, Mitchell was sentenced under the class A misdemeanor alternative provided in IC 35–50–2–7(b) (Burns 1985).

SHIELDS, Presiding Judge.

Carson Tate and Lester Mitchell were convicted of theft.[1] They appeal, claiming the trial court committed fundamental error in allowing the same public defender to represent them both during their joint trial.[2] We agree and reverse.

## FACTS

The evidence supporting the convictions reveals Tate exited a Kroger grocery with a cart of unbagged groceries for which he had not paid. Once outside the store, Mitchell assisted Tate in pushing the cart through the parking lot. When a Kroger employee pursued the two inquiring whether they had a receipt, Tate and Mitchell abandoned the cart and separated. At some point, Mitchell walked toward Tate. However, when Tate approached the Kroger employee and asked, "What groceries?" (Record at 85) Mitchell again went his own way and was corralled by another Kroger employee. Tate and Mitchell were ushered into the store to await the police. Witnesses observed Tate drinking from a Kroger-labeled bottle of Mogen David wine while waiting for the police; other witnesses identified Mitchell as the imbiber.

At their initial hearing Tate and Mitchell received one court-appointed counsel who represented them throughout their joint trial. Neither Tate nor Mitchell lodged an objection to the representation.

## DISCUSSION

■ The right to the assistance of counsel with undivided loyalty is guaranteed by the Sixth Amendment to the United States Constitution. *Holloway v. Arkansas* (1978), 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed. 2d 426. However, without timely objection, a defendant claiming constitutional error in joint representation must "demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyl-*

2. Tate and Mitchell also raise issues concerning the sufficiency of the evidence to sustain their convictions which we do not address. However, we have examined the issue to the extent we hold appellate acquittal is not appropriate.

*er v. Sullivan* (1980), 446 U.S. 335, 348, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333. Because neither Tate nor Mitchell objected to the appointment of joint counsel, the issue on appeal is whether they met their *Cuyler* burden. Necessarily then, the threshold question is what burden does *Cuyler* impose on them?

In the wake of *Cuyler*, some courts have explicitly rejected the apparent two element test advanced by the *Cuyler* majority in favor of requiring only proof of an actual conflict of interest.[3] Other courts, including Indiana, appear to follow the *Cuyler* two element formulation.[4] However, those cases applying the two element test fail to specify the evidence that is relevant in establishing each element of the *Cuyler* test. Consequently, the cases fail to clearly differentiate between the elements of adversely affected performance and actual conflict of interest.

The lack of unanimity in caselaw addressing this question was forecast by Justice Marshall. In his concurring and dissenting opinion in *Cuyler*, Justice Marshall discussed the failure of the majority to expound upon the distinction it appeared to make between the element of actual conflict and the element of adversely affected performance. He also expressed concern about the difficulty of proving adversely affected performance when the attorney's act is one of omission rather than commission. His position was that an adverse affect on the attorney's performance is inherent in a finding of actual conflict and, therefore, proof of the latter is proof of the former.

■ In our opinion, the "actual conflict of interest" component refers to the competing interests of co-defendants arising from multiple representation.[5] In a trial scenario, competing interests exist if the advocacy of one defendant's interest impinges on the advocacy of a co-defendant's interest.[6] The focus is on the client's relationship to one another. Accordingly, in addressing this element it is inappropriate to state "the attorney has a conflict of interest," or to define actual conflict of interest by reference to what counsel does or does not do.[7]

■ In contrast, the "adversely affected performance" component of the two element *Cuyler* test is properly defined by reference to the attorney's conduct. In other words, if the two elements of the *Cuyler* test are to serve distinct and separate functions, in a multiple representation situation[8] the actual conflict element must refer to the state of affairs between the

3. *See e.g. Baty v. Balkcom* (5th Cir.1981), 661 F.2d 391; *People v. Castro* (1983), Colo., 657 P.2d 932.

4. *See e.g. Virgin Islands v. Zepp* (3rd Cir.1984), 748 F.2d 125; *United States ex rel Zembowski v. DeRobertis* (7th Cir.1985), 771 F.2d 1057; *Thompkins v. State* (1985), Ind., 482 N.E.2d 710.

5. An actual conflict may, of course, include situations other than multiple representation. *See e.g. Wood v. Georgia* (1981), 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (employer provided counsel for criminally charged employee).

6. Of course, the litigation interests of co-defendants do not always conflict as where, for example, they rely on distinct alibi defenses. Thus, in *Dean v. State* (1982), Ind., 433 N.E.2d 1172, both defendants were jointly tried and represented by the same attorney. However, because each defendant asserted a different alibi defense, their trial interests did not conflict. So, too, in *Bean v. State* (1984), Ind., 460 N.E.2d 936, our supreme court failed to find error in that instance of joint representation because

there was "no showing that any of the evidence that helped one defendant hurt the other." 460 N.E.2d at 946. Thus, there was no showing of any actual conflict, i.e., that the interests of the co-defendants were inconsistent with one another.

7. We recognize some courts have intermingled a description of the attorney's performance with the phrase "actual conflict of interest." For example, in *Greer v. Black* (8th Cir.1985), 758 F.2d 327, 329, the court states "[a]n actual conflict occurs when counsel cannot use his best efforts to exonerate one defendant for fear of implicating the other." *See also Turnquest v. Wainwright* (5th Cir.1981), 651 F.2d 331, 333 "A conflict of interest is present whenever one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a co-defendant whom counsel is also representing."

8. Of course, the evidence relevant to an actual conflict varies dependent upon the nature of the claim.

co-defendants while the adversely affected performance element must refer to the defense counsel's conduct.

Where an actual conflict of litigation interest exists between the defendants, the attorney's active representation necessarily will result in impairing his performance as to at least one defendant. Given his clients' conflicting interests, counsel is necessarily and inevitably placed in the position where he cannot represent the interest of one defendant without impairing the representation of his other client's interest. Thus, as to the adversely affected performance component of the *Cuyler* test, the record must be searched or evidence must be submitted at a hearing, not to assess the quality of the attorney's tactics, but to determine (1) whether the joint attorney, at various times, represented the different interests of his clients who are challenging that representation, in which case, a reversal would be warranted for all, or (2) whether the attorney consistently represented the interests of one client over the interests of his other client, in which case the attorney's performance is not impaired as to the favored client, and a reversal would not be warranted for that client.

This principle is well illustrated in *Glasser v. United States* (1942), 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, extensively discussed in *Cuyler*. Glasser and Kretske were assistant United States attorneys accused of soliciting and accepting bribes in connection with their duties regarding impending and pending criminal indictments. Shortly before trial, Glasser's attorney was appointed to represent Kretske, and the two were tried jointly. At their trial, Brantman, a prosecution witness, testified he gave Kretske $3,000 on behalf of Abosketes whose indictment was impending. Brantman also testified he did not know Glasser. He was not cross-examined. Then Abosketes, testifying for the prosecution, stated Brantman told him, he (Brantman) knew Glasser and "that was all there was to it." 315 U.S. at 72, 62 S.Ct. at 466.

Abosketes further testified he would not have given Brantman money had he not believed Brantman was able to bribe Glasser.

Brantman's testimony did not exculpate Glasser; it implicated only Kretske. At the same time Abosketes' testimony, while inculpating Glasser, did not exculpate Kretske. Thus, although neither witness's testimony implicating one defendant necessarily exculpated the other defendant, their testimony, taken together, evidenced an incompatibility of interests between Glasser and Kretske, *i.e.*, the actual conflict element. At that point, Glasser's attorney was duty-bound to contend Abosketes was incorrect and Brantman correct. Conversely, as Kretske's attorney, he was duty-bound to contend Abosketes was correct and Brantman incorrect. However, because he represented both at a joint trial, he was unable to effectively represent either Kretske or Glasser. Therefore, by continuing his representation after the actual conflict developed, the attorney's performance was necessarily adversely affected. Further, the fact the attorney did not cross-examine Abosketes was evidence he did not consistently favor Glasser's interests. In sum, the testimony of the prosecution witnesses revealed the actual conflict while the adversely affected performance component was shown by the attorney's continued representation of both Kretske and Glasser in a manner not consistently favorable to Glasser's interest.[9]

So, too, in *Camera v. Fogg* (2nd Cir. 1981), 658 F.2d 80, one attorney jointly represented, at a single trial, co-defendants charged with kidnapping. Although there was evidence the principal defendant had a violent, unpredictable character that kept all of his acquaintances in fear, the attorney's strategy was to prove a crime did not occur because the "victim" consented to the "kidnapping." The court observed the co-defendants would have been able to pursue a defense of duress had they been

---

9. Although Kretske appealed his conviction, he did not raise a conflict of interest issue on appeal.

represented by independent counsel. The court stated:

"It is sufficient to point out that the defense could have been raised and that there was a basis for it, and that it would have served to disassociate [the co-defendants] from [the more culpable defendant] whose interests clearly diverged from [the co-defendants']."

658 F.2d at 82. Therefore, in *Camera*, the fact the attorney was precluded from considering a viable defense option because of his duty to the principal defendant showed that he acted on behalf of the interests of the principal defendant at the expense of his other clients. Thus, as to the other clients, his performance was impaired.

In the present case, despite the dissent's protestation, application of the *Cuyler* standard compels us to conclude the record irrebuttably demonstrates an actual conflict of co-defendants' interests which adversely affected the performance of their attorney.

█ The actual conflict in Tate and Mitchell's interests is evidenced by Tate's testimony at trial. Tate testified he had been in the store, alone, but left empty-handed; that he ran into Mitchell as Mitchell was pushing the full cart through the parking lot; and that he accompanied Mitchell because Mitchell claimed to have something to drink though Mitchell protested they could not drink it in the parking lot.

Tate was therefore professing his own innocence by suggesting that Mitchell stole the groceries and the wine. Certainly this testimony reveals a conflict in the respective interests of Tate and Mitchell. *See Parker v. Parratt* (8th Cir.1981), 662 F.2d 479, 484 ("Clearly a conflict would arise where one defendant attempts to exonerate himself by pointing the finger at co-defendants.")

Equally glaring is the fact that once this conflict in the co-defendants' interests arose the performance of their joint counsel was necessarily impaired by his continued active representation. Tate's exculpatory testimony was received free of cross-examination on Mitchell's behalf, despite the fact Tate attempted to exonerate himself by pointing the finger at Mitchell. Obviously, Mitchell's acquiescence in Tate's scenario was "coerced" because his counsel was precluded from testing Tate's testimony by cross-examination. If counsel had attacked the credibility of Tate's testimony inculpating Mitchell, as he should have as counsel for Mitchell, he would have, at the same time, inculpated Tate. Thus, counsel's active representation of Tate precluded him from cross-examining Tate. Consequently, as in *Camera v. Fogg*, the attorney's failure to cross-examine Tate established his performance on Mitchell's behalf was adversely affected.[10]

---

**10.** *See Turnquest v. Wainwright* (5th Cir.1981), 651 F.2d 331, 334, granting habeas corpus relief;

"The decision in this case, however, does not turn on the specific prejudice shown to have been suffered by defendant, or on speculation as to whether he would have been convicted regardless of Watson's testimony. His attorney was simply blocked from making a decision in the best interest of Turnquest alone, because he was bound to consider the best interest of his other client Smith, an interest which clearly conflicted with the use of Watson's testimony."

*See also United States ex rel Williams v. Franzen* (7th Cir.1982), 687 F.2d 944, 950:

"[I]t is equally apparent the the adequacy of counsel's representation was affected by the conflict. As the district court noted, where two or more defendants have inconsistent stories relating to the crime charged, joint representation is impermissible. *See Turnquest v. Wainwright,* 651 F.2d 331 (5th Cir.1981).

This is particularly true where one of the defendants cannot be effectively prevented by counsel from taking the stand even though prejudice to a co-defendant may result, or where counsel is precluded from cross-examining or impeaching a witness because of conflicting loyalties. *See Ross v. Heyne,* 638 F.2d 979 (7th Cir.1980); *United States v. Gaines,* 529 F.2d 1038 (7th Cir.1976). In the instant case, counsel could neither impeach the testimony of Ernest Clark on behalf of the petitioners, nor prevent Ernest Clark from testifying adversely to the petitioners. We need not speculate further about counsel's trial tactics as it is evident that a conflict of interest existed when counsel was faced with the adverse testimony of one co-defendant which implicated, albeit by inference, the other co-defendants. We conclude that counsel's joint representation violated petitioners' sixth amendment rights."

The conflict of interest between Tate and Mitchell is also evidenced by the testimony of the head cashier, a prosecution witness, identifying Tate as the person who removed the groceries from the store. Given Tate's testimony he did not exit the store with stolen groceries, it was clearly in Tate's best interest to contend the witness was incorrect. Conversely, it was in Mitchell's interest to contend the cashier's testimony was correct. Furthermore, the actual conflict adversely affected joint counsel's representation because his failure to cross-examine the cashier could only benefit Mitchell and adversely affect Tate. Thus, counsel was in an untenable position. His inability to exercise an option that was in Tate's interest is evidence the attorney did not consistently favor Tate over Mitchell and shows his performance as to Tate was adversely affected.

Yet another example of the actual conflict of interest between the defendants occurred when prosecution witnesses testified one of the defendants drank the Kroger-labeled Mogen David wine while waiting for the police to arrive. This evidence is extremely inculpatory given the nature of the charge. Obviously, each wanted the other to be unequivocally identified. In fact, two prosecution witnesses testified Tate controlled the bottle of wine while two witnesses implicated Mitchell. This testimony imposed a duty upon the attorney for each defendant to dispute the testimony implicating his client. However, because there was but one attorney, that duty remained unfulfilled. Joint counsel could not contest either version on behalf of one client because to do so would conflict with his duty on behalf of his other client. Consequently, the attorney's failure to cross-examine the prosecuting witnesses evidences again the evil arising from joint representation of defendants with conflicting interests.

In sum, the record establishes actual conflicts of interest between Tate and Mitchell. Further, the instances of actual conflict, in totality, show that the attorney did not consistently favor the interests of one client at the expense of his other client's interest. Indeed, the fact that both clients testified forced the attorney into the untenable position of being unable to exercise each client's constitutional right to cross-examination. Thus, the attorney's performance was necessarily impaired as to both defendants.

■ Having concluded the requisite components of the *Cuyler* test are satisfied, we turn to the State's argument Tate and Mitchell must show prejudice. The State argues the essence of Tate and Mitchell's claim is that of ineffective counsel and *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, decided after *Cuyler*, requires proof of prejudice in addition to actual conflict of interest and adversely impaired performance. There is no merit to the State's argument for several reasons.

First, the Supreme Court in *Strickland*, plainly and expressly reiterated its holding in *Cuyler*: "[P]rejudice is presumed when counsel is burdened by an actual conflict of interest." *Strickland* 104 S.Ct. at 2067. In *Glasser v. United States* (1942), 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, heavily relied upon by the *Cuyler* court, the Supreme Court found adversely affected performance without regard to a consideration of whether the omitted cross-examination would have had a beneficial effect on the clients case. *See also Camera v. Fogg* (2d Cir.1981), 658 F.2d 80, 82 ("We believe it unnecessary to determine whether or not a defense of duress could have been established, for such an inquiry goes to the question of prejudice, an issue which the Supreme Court has held we need not reach.")

Second, of the recent Indiana cases addressing *Cuyler*, only *Averhart v. State* (1984), Ind., 470 N.E.2d 666 and *Bean v. State* (1984), Ind., 460 N.E.2d 936 refer to a showing of prejudice. However, in *Averhart* and *Bean* our supreme court failed to find error because there was no showing of an actual conflict of interest. Therefore, the *Averhart* and *Bean* courts were not pronouncing law contrary to *Cuyler*. The remaining Indiana cases relevant to the issue, which include the three most recent

Indiana Supreme Court applications of *Cuyler,* contain only a restatement of the *Cuyler* language and do not discuss prejudice. *See Thompkins v. State* (1985), Ind., 482 N.E.2d 710, 712–13; *Beighler v. State* (1985), Ind., 481 N.E.2d 78, 98; *Aubrey v. State* (1985), Ind., 478 N.E.2d 70, 72; *Smith v. State* (1984), Ind., 465 N.E.2d 1105, 1119; *Ward v. State* (1983), Ind.App., 447 N.E.2d 1169, 1170–71; *Loy v. State* (1982), Ind.App., 443 N.E.2d 111, 113; *Richardson v. State* (1982), Ind., 439 N.E. 2d 610, 613; *Dean v. State* (1982), Ind., 433 N.E.2d 1172; *Dowdell v. State* (1981), Ind., 424 N.E.2d 1015, 1017.

Finally, *Cuyler* rejects the necessity of showing actual prejudice. Hence, under Tate and Mitchell's Sixth Amendment claim, a defendant who shows an actual conflict and its adverse effect on his attorney's representation, need not also show prejudice by affirmatively demonstrating his attorney's impaired performance affected the outcome of the trial. Prejudice is presumed. *Strickland.* Hence, Tate and Mitchell, having shown an actual conflict of interest which adversely affected their lawyer's performance, are entitled to a new trial.

Judgment reversed and cause remanded for a new trial.

SULLIVAN, J., concurs.

BUCHANAN, J., dissents, with separate opinion.

BUCHANAN, Judge, dissenting.

As I see it, the effect of the majority opinion is to hand codefendants jointly represented at trial a giant bootstrap with which they can win reversal of convictions at the appellate level by remaining silent at trial, and then asserting conflicting theories of defense on appeal. This legerdemain is accomplished without a showing of actual prejudice. The cases, however, do demand a showing of actual prejudice.

In *Cuyler v. Sullivan* (1980), 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333, the United States Supreme Court declared that, "[i]n order to establish a violation of the Sixth Amendment, *a defendant* who raised no objection at trial *must demonstrate* that *an actual conflict of interest* adversely affected his lawyer's performance." [1] (Emphasis supplied) (footnote omitted). The Indiana Supreme Court has also addressed this issue. Writing for a unanimous court, Justice Pivarnik observed that "[i]n raising such an issue, *the defendant must show* that where there was no objection at trial, such as here, *the joint representation resulted in actual prejudice.*" *Bean v. State* (1984), Ind., 460 N.E.2d 936, 945 (emphasis supplied).

I cannot accept the majority's assertion that the defendants were presumably prejudiced because the focuses of their defenses were different. Tate contended that, although he had been inside the Kroger store, he met Mitchell outside the store and that Mitchell already had the grocery cart full of unpurchased merchandise. *Record* at 111–12. Tate also claimed to have been drinking all day. When asked if he knew what was occurring on the day of the incident he replied "[n]ot really. I wasn't staggering drunk but I can't remember much. I remember parts." *Record* at 112. Mitchell, on the other hand, contended that he had no memory whatsoever of the incident because of his intoxicated state and continuing alcoholism. *Record* at 116–17. I can see no real conflict between these theories of defense. Mitchell's defense of no recollection effectively precluded any conflict with Tate's effort to paint Mitchell as the principal actor in the crime. Moreover, Tate's alternate claim of a faulty memory because of drunkenness is entirely consistent with Mitchell's similar defense. Furthermore, there is no showing that counsel's cross-examination of Tate and Mitchell was in any manner curtailed by his dual representation of the men. Indeed,

---

1. Notwithstanding the majority's suggestion that no showing need be made of the adverse effect of a conflict of interest on the attorney's representation, the Supreme Court continues to require such proof. *See Burger v. Kemp* (1987), —— U.S. ——, 107 S.Ct. 3114, 97 L.Ed.2d 638, which considered both the alleged conflict of interest and its effect on the attorney's performance.

there is no suggestion in the record as to what areas of inquiry might have been opened had each defendant not been represented by the same lawyer.

The factual conflicts regarding which man possessed the wine bottle and the divergence between Tate's testimony and that of the witness who placed him in the store with the grocery cart do not establish actual prejudice as a result of joint representation. It is not unusual for a defendant's version of an incident to differ from that of a witness. Conflicts in the evidence are matters exclusively for the trier of fact's determination.

Finally, I reject any claim of actual prejudice because the evidence of Tate's and Mitchell's guilt is overwhelming. Eyewitness testimony established that groceries were removed from the Kroger store without benefit of payment and that both men were active in the attempted appropriation or the ensuing flight. Regardless of which defendant was in the store or which carried the wine bottle, both men could be found guilty of the offense under the provisions of Ind.Code 35–41–2–4 (1982) which provides that "[a] person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense...."

In *Bean, supra*, the Indiana Supreme Court upheld the defendants' convictions despite their similar complaints about joint representation. The conclusion in *Bean* is apropos here:

"There is no showing that any of the evidence that helped one defendant hurt the other. Defendants do not show they were prejudiced in any way by the fact that they were tried and represented together, nor did they ever indicate in any manner during the trial that they felt they were. There is no merit to this issue."

*Id.* at 946. Thus, I cannot concur in the majority's attempt to *infer* prejudice when none is affirmatively established.

The judgment of the trial court should be affirmed.