**Joseph H. DIDIO, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 782S283.**

Supreme Court of Indiana.

Dec. 28, 1984.

Joseph H. Didio, pro se.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Joseph H. Didio was found guilty by a jury in the Allen Circuit Court of murder and was sentenced to a term of thirty years imprisonment.

Nine issues are presented for our consideration in this direct appeal as follows:

1. the State's amendment of the charging information;

2. refusal of change of venue from the county;

3. denial of motion for mistrial when a prospective juror referred to seeing Defendant in jail;

4. statement of the prosecuting attorney during *voir dire* that Defendant was not subject to the death penalty;

5. comment by prosecuting attorney regarding matters not introduced into evidence;

6. comment by the State on Defendant's failure to testify;

7. reading of final instructions by the trial judge;

8. sufficiency of the evidence; and

9. accumulation of errors.

The facts adduced during trial show that in the early morning of April 19, 1981, the body of a man was found on Valentine Road in Allen County approximately ¼ mile from U.S. Highway 33. Investigation revealed the man died from four gunshot wounds to the head and chest and there was powder residue on the clothing. This indicated that the weapon used was fired from a distance of three feet or less and the blood spatter marks indicated that the gun was a high velocity weapon. The victim was determined to be Thaddeus Seffernick whose blood alcohol level was determined to be .43%. Officers checked for vehicles in surrounding areas and found a van registered to the victim by the "Gibson Girl", a night club with go-go dancers. The "Gibson Girl" was 6¼ miles from the place where the body was found. Further investigation revealed that Defendant had worked as the bartender at the "Gibson Girl" during the evening of April 18. Windy Day was a dancer there and was the former wife of decedent Seffernick. Seffernick had custody of the two children of the marriage and was putting pressure on Day to contribute to their support. Day was at that time Defendant's girlfriend and statements were heard by certain witnesses indicating that Defendant was going to take care of Seffernick to relieve the pressure he was putting on Day for child support. Witness Ron Rupel was a regular customer at the "Gibson Girl" and said he was there most Saturday nights. On this particular Saturday night, that of April 18 and 19, he was there from 10:30 p.m. to

3:15 a.m. and heard Defendant and Day talk about finding a key to the office into which they finally gained entry. Day left the office with a roll of silver duct tape that she put by the cash register. About a half-hour later, Rupel noticed that Defendant was gone and did not see him return until about an hour and one-half later. Steve Freck testified that he was Defendant's friend and assisted him in getting rid of the victim. His testimony resulted from a plea agreement with the State. He specifically testified that at one time, he dated Defendant's former wife and that he was willing to get rid of a person for money. Freck had met Defendant about a year and one-half prior to this incident. At the time of this offense, Defendant and Day were either dating steadily or living together and Defendant was aware the decedent was putting pressure on Day. Freck cut the tires of Seffernick's van on the evening of April 18 and went back into the bar about 1:00 a.m. on April 19 to find the decedent staggering drunk. Freck was given a roll of furnace tape by Defendant and followed the decedent out of the bar. While the decedent was looking at the flat tires on his van, Freck hit him in the face. He then jumped on decedent and hit him a couple of times more. During the fracas, Freck injured his hand. Freck taped the decedent's hands, put him in the rear seat of Freck's automobile and taped his feet and mouth. Freck and Defendant then took the decedent out to the point where the body was found and removed him from the car and removed some of the tape. Defendant thereupon took Freck's .357 Magnum pistol and shot the decedent four times before leaving the scene. After returning to his house, Freck took off his clothes and placed them in a bag which he gave to another man who later burned them. Freck threw the gun in a creek and burned his automobile because there were blood spots on the upholstery. Leryl House testified that he filled in for Defendant as bartender for about an hour and one-half while Defendant was gone. He saw Day and Rupel lay a roll of furnace tape behind the bar before Defendant left.

I

Defendant first claims the trial court erred by permitting the State to amend the charging information. The State contends the change was merely the correction of a clerical error that did not change the substance of the allegations in the charging instrument. The allegations of the information charged that Defendant "did kill Lee Thaddeus Seffernick by shooting at and against the said Lee Thaddeus Seffernick with a certain deadly weapon, to-wit: a handgun and thereby inflicting a mortal wound in and upon the said Lee Thaddeus Seffernick causing him to die." In designating the statute under which the charge was brought, the caption appeared "I.C. § 35–42–1–1(2)." This caption actually referred to the felony murder branch of the statute. Defendant moved to dismiss the information and the State moved to amend the petition by changing the caption to "I.C. § 35–42–1–1(1)" which describes the charge of murder by "knowingly" killing another human being. This amendment was permitted. Defendant now alleges such amendment was contrary to Ind. Code § 35–3.1–1–5 [repealed effective September 1, 1982] (Burns Supp.1984) which prohibits the amendment of informations that change the theory or theories of the prosecution.

We agree with the State that this amendment did not change the theory of the prosecution to the extent that such amendment was impermissible. The State continued to allege exactly the same facts and charge but changed only the designation of the statutory section from which the definition of that crime could be found. The correcting of an immaterial defect is permitted. *Jones v. State*, (1983) Ind., 456 N.E.2d 1025. Here the amendment changed neither the factual allegations nor the characterization of the offense but merely corrected an erroneous statutory citation. The change merely corrected a clerical error and it was proper for the trial judge to permit it.

## II

■ Defendant next claims that the court erred by denying his motion for a change of venue from the county. Defendant's argument is based solely on the theory that the original information charged him with felony murder and he therefore was subject to the death penalty. As such, he had a right to an automatic change of venue. As indicated in Issue I above, however, the information did not charge a felony murder but rather inadvertently referred to the wrong statute designation. In order to bring a death penalty prosecution, the State must charge specific allegations on a separate information pursuant to Ind.Code § 35–50–2–9(a) (Burns 1979). This was not done. The State therefore did not request the death penalty and there was no possibility that one could be imposed. The information before and after the amendment charged the defendant with knowingly and intentionally killing the victim and made no reference to a death penalty. The motion for change of venue was directed only to the trial court's discretion. As such, it is reviewable only for an abuse of that discretion and Defendant has not shown any such abuse. He has not shown the existence of any community prejudice or publicity requiring a change of venue nor did he present any to the trial judge. The trial court did not abuse its discretion in denying the motion. *Grimes v. State*, (1983) Ind., 450 N.E.2d 512.

## III

■ Appellant also argues that a mistrial should have been granted due to a comment by one of the prospective jurors during *voir dire*. One prospective juror, while being questioned, stated that she was an employee of the Sheriff's Department and saw Defendant every day in the jail. This prospective juror was discharged for cause. Appellant cites *Estelle v. Williams*, (1976) 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126, in which the United States Supreme Court held that requiring a defendant to appear in jail clothing throughout a trial could be so prejudicial to that defendant that it was impermissible. Chief Justice Burger stated in an opinion for the majority of the Court:

"Courts have, with few exceptions, determined that an accused should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption so basic to the adversary system ... This is a recognition that the *constant reminder of the accused's condition* implicit in such distinctive, identifiable attire may affect a juror's judgment. The defendant's clothing is so likely to be a *continuing influence throughout the trial* that, not unlike placing a jury in the custody of deputy sheriffs who were also witnesses for the prosecution, an unacceptable risk is presented of impermissible factors coming into play." [Citations and footnote omitted; Emphasis added].

*Estelle*, 425 U.S. at 504, 96 S.Ct. at 1693, 48 L.Ed.2d at 130. Defendant attempts to analogize the harm resulting from the one statement by a prospective juror that he was in jail to the pervasive reminder of a defendant's jail status implicit in the wearing of jail clothes. Here, the one prospective juror stated she saw Defendant in jail. It certainly is not unusual and surely the jurors would be aware that a person charged with murder and being tried for murder would be held in jail pending determination of the case. This does not place Defendant in a position of grave peril to which he should not have been subjected which was the U.S. Supreme Court's concern regarding a person who is seen constantly throughout the trial in jail clothing.

■ Whether or not a mistrial should be granted is largely within the discretion of the trial court and the trial court's decision will merit reversal only upon a showing of abuse of that discretion. Declaration of a mistrial is an extreme action and is warranted only when no other action can be expected to remedy the situation. *Gambill v. State*, (1982) Ind., 436 N.E.2d 301; *Chambers v. State*, (1981) Ind., 422 N.E.2d 1198, *reh. denied.* Here, Defendant did not attempt to challenge for cause the other prospective jurors who were exposed to

the one remark nor did Defendant exercise the peremptory challenges he might have made to any of them. *Foresta v. State,* (1980) 274 Ind. 658, 413 N.E.2d 889; *Monserrate v. State,* (1976) 265 Ind. 153, 352 N.E.2d 721. We fail to find reversible error on this issue.

### IV

■ Defendant further complains that during *voir dire* questioning, the prosecuting attorney made reference to the fact that the jury would not be considering the death penalty in this case. Defendant objected to this statement as it referred to penalties and the jury does not consider penalties but merely makes a finding of guilt or innocence. The trial court sustained Defendant's objection. Defendant did not ask for further curative action either by admonishing the prospective jurors or by granting a mistrial and a discharge of those prospective jurors present. The trial court took the curative action requested by Defendant and the subject was not referred to again by the State. Since Defendant asked for no further curative action by the trial court, he waived consideration of the issue in this appeal. *Brown v. State,* (1981) 275 Ind. 441, 417 N.E.2d 333. He further waived the issue since he did not challenge any of the prospective jurors nor did he exhaust his peremptory challenges during *voir dire. Monserrate, supra.*

### V

■ Defendant also claims that reversible error resulted from a remark made by the prosecuting attorney during final argument regarding Defendant's alleged attempt to manipulate evidence by giving away the shoes he was wearing on the night of the murder and by furnishing the State with a different pair. There were several instances of manipulation of evidence presented by the prosecutor in the State's evidence including the hiding of guns, the burning of blood stained objects, and the conniving of false testimony concerning an effort to get medical attention

for Freck's injured hand. The incident involving the switching of shoes was apparently one the State intended to present into evidence but did not completely do so. During final argument, the State mentioned the incidents of evidence manipulation and, *inter alia,* referred to the fact that Defendant switched shoes on the State. Defendant now claims error was committed by the State's mentioning of the discrepancy of the shoes although the same had not been introduced into evidence. The State's contention is that even though the shoe switching was not fully revealed in the evidence, the prosecutor mistakenly thought this had been done and did not purposely misstate the evidence.

We first note that this single misstatement of evidence by the prosecutor did not represent the prosecutorial overreaching or misconduct found in *Craig v. State,* (1977) 267 Ind. 359, 370 N.E.2d 880, *on remand* (1980) 272 Ind. 388, 398 N.E.2d 661, or *Maldonado v. State,* (1976) 265 Ind. 492, 355 N.E.2d 843. Furthermore, Defendant waived this issue since he did not object to the comment at the time it was made so that the trial court could have corrected any impressions resulting from the remark. *Craig, supra.* Appellant accordingly presents no grounds for reversal on this issue.

### VI

■ Appellant characterizes three statements made by the prosecution as impermissible comments on his failure to testify. It is the State's contention that the comments amounted to remarks on the lack of an explanation by the defense concerning otherwise incriminating evidence against the accused which is proper so long as the State comments or focuses on the absence of evidence to contradict the State's evidence and not on the accused's failure to testify. *Bailey v. State,* (1982) Ind.App., 438 N.E.2d 22, *trans. denied.*

■ Early in the investigation, Defendant told the police that the only problem they had at the "Gibson Girl" on the night of the 18th was that a group of "cowboys"

from Chicago came in and caused a lot of trouble. The prosecutor reminded the jury during final argument that no one but Defendant had mentioned anything about "cowboys" causing trouble in the bar that evening. The prosecutor further recalled to the jury that Officer Walters had testified about what Defendant had told him. The third statement by the prosecutor invited the jury to infer that Windy Day's early knowledge of Seffernick's death and type of wounds as expressed to her sister, came from Defendant. In *Williams v. State*, (1981) Ind., 426 N.E.2d 662, *reh. denied*, this Court held that in some situations it may not be improper for the prosecution to go so far as to point out during final summation that the prosecution's case is unimpeached and uncontradicted. However, where no one but the accused could have contradicted the prosecution's witnesses, such a statement is improper and represents an objectionable comment on the accused's failure to testify. For instance, a reference to a witness's testimony that this "is basically the only story" can infer to the jury that the defendant could have furnished the other side of the story if he had testified. *Williams, supra; Rowley v. State*, (1972) 259 Ind. 209, 285 N.E.2d 646. No such reference was made to a lack of Defendant's testimony here but instead the comments in this case referred to the testimony of witnesses the jury had heard. Furthermore, Defendant failed to object to these comments when made and the trial court was therefore not called upon to take any curative action. Defendant waived this issue.

## VII

■■■ Defendant claims the trial court committed error in the giving of its instruction defining the offense of murder and in the manner in which said instruction was read to the jury. The record shows, however, that Defendant failed to object to the preparation of this instruction or to the giving of it. Moreover, he did not tender an instruction that would have corrected the objections he had to the one given. Failure to complain of alleged errors at trial results in waiver of the issue. *Wininger v. State*, (1983) Ind., 454 N.E.2d 860; *Minneman v. State*, (1982) Ind., 441 N.E.2d 673, *cert. denied* (1983) 461 U.S. 933, 103 S.Ct. 2099, 77 L.Ed.2d 307. We find no error.

## VIII

■■■ Defendant also contends that there was insufficient evidence by which the jury could arrive at its verdict that Defendant was guilty of murder beyond a reasonable doubt. In reviewing a sufficiency claim, this Court looks only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. We determine only whether there is substantial evidence of probative value from which the jury could make its finding beyond a reasonable doubt. *Hubbard v. State*, (1982) Ind., 437 N.E.2d 52. If there is evidence of probative value to support the jury's conclusion, the conviction will not be overturned. *Williams v. State*, (1982) Ind., 433 N.E.2d 769. Here, witness Freck's testimony directly implicated Defendant in the killing of the victim. Defendant's argument that Freck's testimony is untrustworthy does no more than invite this Court to re-determine the credibility of the evidence which we refrain from doing. *Gatewood v. State*, (1982) Ind., 430 N.E.2d 781. A conviction may properly rest on the uncorroborated testimony of one witness. *Dew v. State*, (1982) Ind., 439 N.E.2d 624. Here, however, there was corroborating testimony from several other witnesses that we already have outlined in this opinion. There is no merit to Defendant's contention in regard to this issue.

## IX

■■■ Finally, Defendant urges that the accumulation of all the errors he has raised resulted in such an unfair trial that it amounted to fundamental error. Since we have found that none of the individual issues raise any question of prejudicial error to the defendant that merits reversal, we

do not find that they cumulatively rise to that level. *Napier v. State*, (1983) Ind., 445 N.E.2d 1361, *reh. denied.* There is no merit to Defendant's contentions in this regard.

Finding no error, we affirm the trial court.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.