Wesley N. WHITTLE, Appellant,

v.

STATE of Indiana, Appellee.

No. 07S00–8703–CR–00345.

Supreme Court of Indiana.

Aug. 31, 1989.

Wesley N. Whittle, pro se.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant, Wesley N. Whittle, brings this direct appeal *pro se* following his conviction in the Brown Circuit Court of the crimes of Conspiracy to Commit Battery by Means of a Deadly Weapon and Voluntary Manslaughter. Whittle was charged and tried for conspiracy to commit murder and murder. The trial court subsequently sentenced Whittle to eight (8) years for his conviction of Conspiracy to Commit Battery by Means of a Deadly Weapon and twenty (20) years for his conviction of Manslaughter, said terms to run concurrently. He appeals *pro se* directly to this Court raising several issues for our review, which we restate and renumber as follows:

1. whether the trial court sufficiently inquired into the joint representation by one counsel of all five co-defendants;

2. whether trial counsel was ineffective because he represented other Iron Horsemen members who were prosecution witnesses and the five co-defendants;

3. whether trial counsel was ineffective based on other allegations of error;

4. alleged use of false testimony;

5. whether the trial court erred in not calling *sua sponte* a recess before the testimony of Lockhart and Bergeron;

6. whether Whittle was prejudiced by the prosecutor's solicitation of evidence pertaining to the motorcycle clubs;

7. whether Whittle was denied a fair trial because the prosecutor failed to disclose possibly exculpatory evidence;

8. alleged error in jury instructions on the elements of conspiracy to commit battery and on accomplice liability;

9. sufficiency of the evidence to sustain the conviction for conspiracy to commit battery;

10. sufficiency of the evidence to sustain the conviction for voluntary manslaughter;

11. whether it was error for the prosecutor to explain the verdict forms to the jury during final argument; and

12. whether the trial court erred in communicating with the deliberating jury in Whittle's absence.

The facts most favorable to the verdict below show that on August 16, 1985, the national president of the Iron Horsemen Motorcycle Club was beaten by rival motorcycle club members in front of the Blues' Motorcycle Club clubhouse in New Albany, Indiana. The Blues called themselves the Blues Social Club. The Blues acknowledged that the president of the Iron Horsemen had been beaten in front of the Blues' clubhouse on that date but claimed they had nothing to do with it. They stated that members of another motorcycle club called the Outlaws had done the beating. Nevertheless, the Blues feared the Iron Horsemen would blame them and seek revenge. In order to meet this expected confrontation, the Blues members brought various firearms to their clubhouse in order to protect themselves. On the night of August 17, 1985, members of the Blues were in their clubhouse, armed and waiting for the attack. Jim Cox, a Blues member, was outside the clubhouse, near the alley, apparently watching for the approach of the Iron Horsemen. On that night, Whittle and four other Iron Horsemen came to the

Blues' clubhouse armed with various weapons and opened fire on the Blues. Cox remained outside, exchanging fire with them, and subsequently died from his wounds.

Several of the Iron Horsemen were also wounded from gunfire. Following a trail of blood from the shootout area, police discovered a sawed-off shotgun leaning against a house and co-defendant Sositko was found and arrested nearby. Whittle was arrested in a bloodstained van which belonged to his father and which matched the description of a van used by the Iron Horsemen at the shootout. Co-defendants Pridemore, Dorion and Mullins were all found at a hospital, suffering from gunshot wounds. Although neither Whittle nor his co-defendants testified at the trial, members of the Iron Horsemen testified that several of the Iron Horsemen members had received telephone calls from members of the Blues inviting them to come to the Blues' clubhouse to talk things over and drink some beer. This was their explanation for going there and they claimed that when Whittle and his co-defendants went to the Blues' clubhouse it was for that purpose. They claimed they did not realize until they were fired upon by the Blues that they had been "set up."

## I

■ Whittle complains the trial court did not sufficiently inquire into the joint representation by one counsel of all five co-defendants so as to prevent a conflict of interest.

At the preliminary probable cause and bond hearing, the court advised Whittle and his co-defendants of their right to individual attorneys. The court stated:

We'll find there is probable cause and want to inform each of the Defendants, all four (4) of the Defendants present before me that you certainly have already retained counsel but each of you have the right to an attorney. You also have, if you're unable to afford an attorney one will be appointed for you at no expense to you.

*Supplemental Record* at 7. After jury selection the trial judge made the following inquiry:

I'm going to ask each Defendant ... you are represented by Mr. Gerry Barker. I'm going to ask you individually and collectively ... and he is going to be your Attorney throughout this thing. There is ... I assume there is no question in any of your minds about a conflict of authority ... a conflict between the fact that he represents each and every one of you ... and you are all charged with two serious crimes. If there is any question ... you can address it to me at this point. You are satisfied with the fact that Mr. Barker is representing all of you? Is that yes from everybody here. It is. And nobody is raising any question that he may have a conflict because he is representing you all? That is your desire that he continue this trial as sole Attorney for you? Is that correct? Well let the record so reflect.

*Record* at 767–68.

Whittle argues this was not a sufficient inquiry into possible conflicts of interest. However, a trial court need not initiate an inquiry into joint representation unless it knows or reasonably should know that a particular conflict exists. *Cuyler v. Sullivan* (1980), 446 U.S. 335, 347, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333, 345; *Averhart v. State* (1984), Ind., 470 N.E.2d 666, 681, *cert. denied* (1985), 471 U.S. 1030, 105 S.Ct. 2051, 85 L.Ed.2d 323. Whittle does not claim the trial court knew or should have known of a particular conflict with the joint representation at that time. The trial court presented Whittle with the opportunity to raise any potential conflict of interest, but no objection to joint representation was made. As Whittle was advised of his right to individual counsel and was questioned about possible conflicts of interest, his failure to request individual counsel or object to joint representation constitutes a waiver of this claim.

## II

■ Whittle claims ineffective assistance by trial counsel because counsel repre-

sented other Iron Horsemen members who were prosecution witnesses and because he represented all five of the co-defendants. To prevail on his claim, Whittle must show that his counsel actively represented conflicting interests and establish that this adversely affected his lawyer's performance. *Strickland v. Washington* (1984), 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674, 696, *reh. denied* (1984), 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864; *Cuyler v. Sullivan* (1980), 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333, 346–47; *Aubrey v. State* (1985), Ind., 478 N.E.2d 70, 72. Where there was no objection at trial, such as here, the defendant must show the joint representation resulted in actual prejudice. *Aubrey*, 478 N.E.2d at 72; *Bean v. State* (1984), Ind., 460 N.E.2d 936, 945.

■ Whittle claims trial counsel had a conflict of interest because, without his consent, trial counsel obtained immunity from prosecution for Iron Horsemen Richard Lockhart and David Bergeron as prosecution witnesses. Whittle's contention is not supported by any evidence except his own contention here and an affidavit he filed in his Motion to Correct Error. It is evident Whittle knew his trial counsel also represented Lockhart and Bergeron. Counsel represented Lockhart in another unrelated matter. It was admitted that Lockhart was a leader in the club and was instrumental in obtaining this lawyer to represent the defendants. One of the defendants even stated Lockhart paid the lawyer. Thus, Whittle's statement that he did not know of this relationship until the question of immunity arose at trial is not convincing.

Lockhart and Bergeron were called as State's witnesses. First Lockhart and then Bergeron refused to testify based on their Fifth Amendment right to remain silent. When the State made the offer of immunity to Lockhart, the trial court indicated he would grant use immunity and order Lockhart to testify. The only part defense counsel took in this procedure was to inquire on behalf of Lockhart whether this immunity would extend to other jurisdictions such as federal courts and other state courts. The trial judge took the position that the federal courts and other courts in this state would recognize the immunity and assured counsel this was so. The prosecutor agreed. These events also took place later when Bergeron testified. Thus, it is not accurate to say defense counsel obtained immunity for the two witnesses. It is not necessary that the defense agree to the granting of use immunity; so defense counsel had no power to control it. His effort was to assure it would extend to other jurisdictions.

Notably, Whittle made no objection to any of this at trial. Nor can he demonstrate an actual conflict of interest which adversely affected counsel's performance. Both Lockhart and Bergeron testified the defendants were at the scene but that they had been set up and the victim started the shooting. Thus, their testimony was in keeping with the defense theory that the defendants had not come to the Blues' clubhouse to start a gun battle and that the Blues started the shooting. Although counsel had no control over these witnesses being called and testifying as they did, it is conceivable that trial counsel made the strategic decision that these witnesses were favorable to the defendants because they were friendly to them as fellow members of the Iron Horsemen and would establish their theory of defense. It appears reasonable for counsel to take this attitude since it was the five defendants' only defense. They did approach the Blues' clubhouse and did carry weapons which caused the death of Cox. This defense gave them a reason for being at the scene and spoke directly to their motive and intentions. In fact, the jury returned verdicts of conspiracy to commit battery rather than conspiracy to commit murder and voluntary manslaughter rather than murder.

Apparently, witness Bergeron did not testify as favorably as the State had expected. Although he admitted he helped drive these defendants to the scene, he testified he saw no shotguns in the possession of any of the defendants, including Whittle. Generally, Bergeron's testimony regarding Whittle and his co-defendants as to their actions, including weapons used,

was in conflict with all the other evidence. For this reason, the State found it necessary to ask that Bergeron be declared a hostile witness, claiming he was not telling the truth. Lockhart was not present at the time of any of these events because he was out of the state at the time. His testimony was that these defendants had told him they received calls from persons representing themselves to be Blues members, inviting them to come to the clubhouse to talk things over and drink some beer together. Whittle's complaint that counsel did not cross-examine Lockhart is therefore without merit because Lockhart had no first-hand knowledge of the incident and his direct testimony was favorable to Whittle. The same can be said of Bergeron's testimony although defense counsel cross-examined Bergeron about some of the events of the night. This cross-examination did not bring out damaging evidence against Whittle. Furthermore, the record does not indicate any confidential information obtained from counsel's representation of Lockhart or Bergeron which would have been relevant to cross-examination that he did not use because of his professional allegiance to Lockhart or Bergeron. *See Wise v. State* (1986), Ind., 501 N.E.2d 435, 436. Thus, Whittle has not established an actual conflict of interest. None of these events prejudiced him in any manner. In fact, as has been demonstrated, they were beneficial to him and represented a reasonable strategic decision.

■ Whittle claims counsel's joint representation of all five co-defendants at trial deprived him of effective assistance of counsel. Again, his contention is not supported by any more than his general statement that it is so. Mere joint representation does not violate the right to counsel or establish ineffective representation *per se. Carpenter v. State* (1986), Ind., 501 N.E.2d 1067, 1070. Whittle does not show or even claim there was any conflict in the interest of the five defendants. The evidence did not single out any defendant in the shooting incident. They were all charged with the same act and all claimed the same defense. Moreover, Whittle, because he did not object at trial, cannot establish a

violation of his right to counsel unless he demonstrates there was an actual conflict of interest which adversely affected the attorney's performance in representing his interest. *Strickland v. Washington, supra; Cuyler v. Sullivan, supra; Aubrey v. State, supra; Wise v. State, supra.* Whittle's contention makes only general claims suggesting a mere possibility of council's conflict of interest. This is not sufficient to support his contentions. *Bieghler v. State* (1985), Ind., 481 N.E.2d 78, 98–99, *cert. denied* (1986), 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349; *Averhart v. State* (1984), Ind., 470 N.E.2d 666, 681, *cert. denied* (1985), 471 U.S. 1030, 105 S.Ct. 2051, 85 L.Ed.2d 323.

### III

■ Whittle alleges other instances demonstrating ineffective assistance of counsel. He raises the following instances of alleged ineffective representation:

1. counsel was ineffective because he did not interview any witnesses and was not prepared to meet the testimony of witnesses;

2. counsel was ineffective for not objecting to the introduction of false evidence;

3. counsel was ineffective for waiving a chain of custody argument on a shotgun;

4. counsel was ineffective because he allegedly failed to object to all instances of the prosecutor's references to the Iron Horsemen;

5. counsel was ineffective for stipulating there was hostility between the Iron Horsemen and the Outlaws;

6. counsel was ineffective because he did not request a recess to interview Lockhart and Bergeron after they were granted immunity;

7. trial counsel was ineffective because he did not consult with Whittle on developments or decisions in the case and waived Whittle's right to be present at all proceedings; and

8. counsel was ineffective because he did not inform him of the prosecution's plea offer.

Judicial scrutiny of an attorney's performance is highly deferential. The standard for counsel's performance is that of reasonably effective assistance. To prevail on his claim, Whittle must show that his attorney's performance was deficient and that the defense was prejudiced by the deficient performance. *Strickland v. Washington* (1984), 466 U.S. 668, 687–89, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674, 693–94, *reh. denied* (1984), 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864; *Jones v. State* (1986), Ind., 495 N.E.2d 532, 534.

Whittle first charges that trial counsel did not interview any witnesses and was not prepared to meet the testimony of witnesses. His contention is not supported. He merely asserts counsel did not interview William Richards and Detective Hubbard. While counsel exhibited a momentary confusion regarding witness Richards, counsel cross-examined Richards as to his statement to the police, a clear indication that counsel was familiar with the witness and had prepared for the cross-examination. Regarding Detective Hubbard, Whittle's argument that counsel did not subsequently call Detective Hubbard as a defense witness does not demonstrate counsel did not prepare for the witness. It is equally plausible that counsel was well aware of Detective Hubbard's participation in the investigation of the case and, as a matter of trial tactics, chose not to further question him. Moreover, Whittle's claim that Detective Hubbard testified at sentencing that the shooting may have been in self-defense is false. Hubbard testified only that there was a strong possibility the victim fired first. However, he did not indicate that the shooting by Whittle and his companions was in self-defense. Whittle has not established that trial counsel failed to interview witnesses or prepare for trial. The record as a whole shows counsel was prepared for trial and effectively cross-examined witnesses, which included reference to their prior statements or reports.

Whittle claims counsel was ineffective for not objecting to the introduction of false evidence. However, Whittle has not identified the alleged false evidence counsel allegedly failed to challenge at trial. Because Whittle did not identify the alleged error, it cannot be determined if counsel erred in not objecting. *See Slaton v. State* (1987), Ind., 510 N.E.2d 1343, 1345. Moreover, if Whittle is alluding to the testimony of David Bergeron, his claim that counsel should have objected to this false testimony must fail for Whittle has not established that the testimony was false. *See* Issue IV below.

Whittle claims counsel was ineffective for waiving argument on chain of custody of a shotgun. However, this weapon was positively identified by the witness as the gun observed the night of the crime. Because of the non-fungible nature of the exhibit, the chain of custody rule was satisfied by the eyewitness identification of the exhibit. *See Dickerson v. State* (1986), Ind., 488 N.E.2d 346, 348; *Johnson v. State* (1983), Ind., 447 N.E.2d 1072, 1074. Counsel could not have achieved exclusion of the exhibit by further objection. Because an objection would not have been sustained, counsel's waiver of the chain of custody objection is not evidence of ineffective counsel. *See Grigsby v. State* (1987), Ind., 503 N.E.2d 394, 396.

Whittle claims counsel was ineffective because counsel allegedly failed to object to all instances of the prosecutor's references to the Iron Horsemen. However, such evidence was admissible on the issue of motive. *See* Issue VI. Objections by defense counsel therefore would not necessarily have been sustained. Counsel's failure to object does not constitute ineffective representation. *See Grigsby*, 503 N.E.2d at 396.

Whittle claims counsel was ineffective for stipulating there was hostility between the Iron Horsemen and the Outlaws. However, this was evidently a matter of trial tactics to keep out damaging testimony concerning specific facts on the Outlaws. Considering that the evidence on the events leading up to the shooting clearly established hostility between the Iron Horsemen and the Outlaws, it is doubtful counsel's stipulation to that fact prejudiced Whittle. Also, the stipulation was helpful to the

defense that the Iron Horsemen were set up. It is not for the reviewing court to speculate on what may have been a more advantageous strategy or tactic through use of hindsight. *Van Evey v. State* (1986), Ind., 499 N.E.2d 245, 247. Counsel's stipulation does not evidence deficient performance.

Whittle claims counsel was ineffective because he did not request a recess to interview Lockhart and Bergeron after they were granted immunity. He also bases this claim on counsel's conduct during the examination of these witnesses. Whittle complains counsel bolstered Bergeron's credibility. Bergeron testified for the State but was declared a hostile witness. His testimony aided the defense as it presented the defense theory that the Iron Horsemen were set up. If defense counsel did attempt to bolster Bergeron's credibility this would not have prejudiced Whittle. Rather it would have aided the self-defense claim. Regarding Lockhart, trial counsel probably did not believe it was necessary to cross-examine him as he was not in the state at the time of the shooting and had no direct evidence concerning the events of the shooting. Also, his testimony on direct examination supported the defense theory of a setup; thus, it would not have been necessary to cross-examine him. This was a tactical decision and should not be second-guessed on appeal. *See May v. State* (1986), Ind., 502 N.E.2d 96, 103. These complaints will not support his claims of ineffective assistance of counsel.

Whittle alleges trial counsel was ineffective because he did not consult with Whittle on developments or decisions in the case and waived Whittle's right to be present at all proceedings. The only evidence in support of Whittle's claims is Whittle's post-trial affidavit. The trial transcript shows that counsel stated he had consulted with Whittle about being present and Whittle had waived this right. Whittle's failure to obtained a statement from trial counsel to support his claim permits an inference that a statement from counsel would not support Whittle's claim. *See Van Evey*, 499 N.E.2d at 248. Further, Whittle has not established any prejudice to his cause through counsel's alleged deficient performance. This claim will not support his allegation of ineffective assistance.

Whittle claims counsel was ineffective because he did not inform him of the prosecution's plea offer. Failure to convey a plea offer from the prosecutor to the defendant constitutes a denial of effective assistance of counsel. *Gibbs v. State* (1985), Ind., 483 N.E.2d 1365, 1366; *Young v. State* (1984), Ind., 470 N.E.2d 70, 71. However, the only evidence to support Whittle's claim is his post-trial affidavit. It states in pertinent part:

2. That Affiant was never informed by Gerry Barker that the prosecutor had offered to drop Affiant's charges in exchange for testifying against Chester Bishop;

3. That as soon as Affiant was informed of the prosecutor's offer to drop charges by Co–Defendant Michael Mullins, Gerry Barker immediately jumped out of his chair, replying "That's against our code," and opened the door and ushered the other four defendants and Affiant back into the courtroom so it could not be discussed further nor accepted.

*Record* at 80. Thus, Whittle's affidavit alleges his co-defendant Mullins informed him of the alleged plea offer in counsel's presence. Assuming the offer was made, it was communicated to Whittle and Whittle had the opportunity to inquire into the offer but did not do so. Whittle therefore was not denied the opportunity to plea bargain due to counsel's actions. *See Curl v. State* (1980), 272 Ind. 605, 608, 400 N.E.2d 775, 777. Whittle has not shown that the assistance of his trial counsel was ineffective.

## IV

Whittle claims the State used evidence which had not been admitted at trial and argues that in calling David Bergeron as a witness, the prosecution knowingly permitted the use of false testimony.

Whittle claims the prosecution impermissibly used evidence that was not admitted at trial, referring to testimony dur-

ing the trial and statements made by the prosecutor during closing argument. No objection was raised at trial to these instances of alleged improper conduct and Whittle failed to move for a mistrial or an admonishment. The failure to object at trial preserves no error for appellate review. *Gambill v. State* (1985), Ind., 479 N.E.2d 523, 526.

 Regarding the argument that the prosecution knowingly permitted Bergeron to give false testimony, Whittle has failed to establish that such occurred at trial. Contradictory or inconsistent testimony by a witness does not constitute perjury. *Evans v. State* (1986), Ind., 489 N.E.2d 942, 948. Conflicts and inconsistencies by a witness, even an allegedly incredulous account of the circumstances of the offense, do not conclusively amount to perjury. Rather, these are matters for the trier of fact to resolve. *Wallace v. State* (1985), Ind., 474 N.E.2d 1006, 1008. A conviction will be set aside only if there is a reasonable likelihood the false testimony could have affected the jury's decision. *Carey v. State* (1981), 275 Ind. 321, 329, 416 N.E.2d 1252, 1257.

 Bergeron's testimony may have contained inconsistencies and conflicts and may have been somewhat incredulous when compared with the testimony of other witnesses. However, Whittle has not demonstrated that the prosecution knowingly used perjured testimony. The prosecution called David Bergeron as a witness and later declared him a hostile witness, stating that his testimony that none of the five defendants had fired any shots contradicted the evidence. Bergeron also claimed that only the five defendants were with him at the scene of the shooting. Other witnesses testified there were more than six people at the shooting. Whittle has established only that Bergeron's testimony was inconsistent with the testimony of other state witnesses.

## V

 Whittle claims the trial court erred in not calling *sua sponte* a recess before the testimony of Lockhart and Ber-

geron. He claims they were surprise prosecution witnesses who had not given prior statements and, therefore, defense counsel was unprepared to cross-examine them. Neither Whittle nor his counsel raised an objection to the testimony based on a lack of discovery, nor was there a request for a continuance to learn of their evidence. It is incumbent on the defense to request the appropriate sanction in order to preserve any error for review. *Coppock v. State* (1985), Ind., 480 N.E.2d 941, 945. When no objection to the evidence is raised at trial, the issue is waived. The failure to object at trial preserves no error for appellate review. *Gambill*, 479 N.E.2d at 526.

## VI

 Whittle argues he was prejudiced by the prosecutor's solicitation of evidence pertaining to motorcycle clubs. However, the prosecutor's eliciting of this information was not improper as it helped establish a motive for the crime. Evidence of motive is relevant in the proof of a crime. *Webb v. State* (1983), Ind., 453 N.E.2d 180, 187, *cert. denied* (1984), 465 U.S. 1081, 104 S.Ct. 1449, 79 L.Ed.2d 767. The prosecutor's questions concerning motorcycle clubs were intended to show that Whittle and his co-defendants belonged to the Iron Horsemen Club and that the Iron Horsemen Club is a motorcycle club whose members are likely to take the law into their own hands when a member is assaulted. The assault on the national president of the Iron Horsemen Club gave Whittle and his co-defendants a motive of revenge for their attack. That Whittle and the others had a motive for attacking the Blues' clubhouse had a tendency to show that Whittle and his fellow Iron Horsemen conspired to attack and shoot people at the Blues' clubhouse. Evidence tending to show this motive, Whittle's membership in the Iron Horsemen and the characteristics and activities of the Iron Horsemen, was admissible because it tended to establish the conspiracy charge. Thus, the prosecutor's questions were proper to establish motive. *See Wilhelm v. State* (1983), Ind., 455 N.E.2d 595, 599.

## VII

Whittle claims the State denied him a fair trial because the prosecutor failed to disclose possibly exculpatory evidence to him prior to trial. At the sentencing hearing, defense counsel questioned Detective Randy Hubbard about a conversation he had with the detective following the trial. Detective Hubbard stated that from the evidence at trial and the police reports and information he had seen, it was a strong possibility that the victim fired his gun first. Whittle now claims Detective Hubbard's conclusion from the reports that the victim fired first was exculpatory evidence showing self defense and the prosecution was obliged to furnish this to the defense. There is no merit to this contention. Contrary to Whittle's claim on appeal, there is nothing in the record to indicate that this information was available to the prosecution so that it could be furnished to the defense. There is no indication as to when Hubbard formed this opinion and, in fact, Hubbard stated at sentencing that he based his opinion from the evidence at trial and other information available from the reports. At best, Hubbard's statement represented a speculative opinion that did not rise to evidence exculpatory of Whittle. It presents a possibility that the victim fired first and, as opinion testimony, would have little probative value. *Hensley v. State* (1983), Ind., 448 N.E.2d 665, 667. Further, the record shows Whittle requested and received a general discovery order. That order included all police reports and there is no showing Hubbard's opinion appeared in any of them. As stated above, there is no showing Hubbard arrived at any such opinion until after the trial was over. The prosecutor is required to disclose evidence which is so obviously exculpatory that a failure to do so would deny a defendant a fair trial. *Dukes v. State* (1986), Ind., 501 N.E.2d 420, 423; *Hunt v. State* (1983), Ind., 455 N.E.2d 307, 314. There is no such showing here.

## VIII

Whittle complains the trial court erroneously instructed the jury on the elements of the lesser included offense of conspiracy to commit battery, a class C felony. He claims the trial court should have instructed that the use of a deadly weapon had to be intended as part of the agreement and the instructions given on conspiracy and battery misled the jury. However, he has not set forth the given instructions or his verbatim objections to them in his appellate brief. This omission constitutes a waiver of the alleged error. *See Collier v. State* (1984), Ind., 470 N.E.2d 1340, 1342. It also appears Whittle did not object at trial to the instructions on conspiracy and battery and, therefore, waived any claim of error to the trial court's instructions. *See Cox v. State* (1985), Ind., 475 N.E.2d 664, 669; *Didio v. State* (1984), Ind., 471 N.E.2d 1117, 1123. Finally, Whittle failed to tender any written instruction to correct the alleged inadequacy of the instructions on conspiracy and battery. This constituted a waiver of the alleged error in not giving a particular instruction. *See Didio*, 471 N.E.2d at 1123; *Smith v. State* (1984), Ind., 465 N.E.2d 1105, 1123; *Lane v. State* (1983), Ind., 451 N.E.2d 659, 660.

Whittle next attacks the trial court's instruction on accomplice liability. However, the record does not show any objection to the giving of this instruction. Therefore, any alleged error was waived. *Cox*, 475 N.E.2d at 669; *Didio*, 471 N.E.2d at 1123. Moreover, there is no distinction between the responsibility of a principal and an accomplice. Thus, one may be charged as a principal yet convicted as an accomplice. *Fisher v. State* (1984), Ind., 468 N.E.2d 1365, 1369; *Ralston v. State* (1980), Ind.App., 412 N.E.2d 239, 253. The evidence demonstrates that Whittle was, at least, an accomplice. An instruction on accomplice liability was therefore proper. *Fisher*, 468 N.E.2d at 1369.

Whittle further claims that the evidence is such that to convict him as an accomplice to the conspiracy when he is also convicted of voluntary manslaughter is double jeopardy. He claims that under the facts presented the same evidence is used

to convict under both charges and this constitutes double jeopardy. His argument appears to be the "same transaction" test which has been rejected in favor of the "identity of the offenses" test. *See Elmore v. State* (1978), 269 Ind. 532, 382 N.E.2d 893. The proper focus for cases where the same act or transaction constitutes a violation of two distinct statutory provisions is whether each offense requires proof of an element the other does not. *Edwards v. State* (1985), Ind., 479 N.E.2d 541, 544–45; *Elmore*, 269 Ind. at 541, 382 N.E.2d at 898. The elements of the two crimes of which Whittle was convicted are different. The gist of a conspiracy conviction is the criminal agreement by two or more persons the object of which is the commission of a felony. *Smith*, 465 N.E.2d at 1123; *Elmore*, 269 Ind. at 541, 382 N.E.2d at 898. The felony need not be committed or even attempted. *Id.* On the other hand, the voluntary manslaughter conviction requires that a person be killed. For double jeopardy purposes, voluntary manslaughter and conspiracy to commit battery are two distinct offenses requiring proof of different elements. Here, the conspiracy to commit battery conviction did not require proof of any killing, only that Whittle agreed to commit battery. Whittle's conviction on both counts is not double jeopardy.

## IX

Whittle claims the evidence is insufficient to sustain his conviction for conspiracy to commit battery. As a court of review, we do not judge the credibility of witnesses nor reweigh the evidence. Rather, we look only to that evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact the verdict will not be overturned. *Loyd v. State* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied* (1980), 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

The requisite elements of conspiracy are 1) intent to commit a felony, 2) an agreement with another person to com-mit the felony, and 3) an overt act in furtherance of that agreement. *Perkins v. State* (1985), Ind., 483 N.E.2d 1379, 1385. While a conspiracy entails an intelligent and deliberate agreement between the parties, the State is not required to prove the existence of a formal express agreement. *Perkins*, 483 N.E.2d at 1385; *Surance v. State* (1984), Ind., 465 N.E.2d 1076, 1080. The agreement, as well as the requisite guilty knowledge and intent, may be inferred from circumstantial evidence, including overt acts in furtherance of the criminal act. *Haynes v. State* (1985), Ind., 479 N.E.2d 572, 574; *Surance*, 465 N.E.2d at 1080. When overt acts are of a character which tend to show a pre-existing conspiracy, the acts, when proven, may be considered as evidence of the charged conspiracy. *Surance*, 465 N.E.2d at 1081.

Here, the evidence demonstrates that the requisite agreement, intent, and overt act were established beyond a reasonable doubt. Whittle and his co-defendants were members of the Iron Horsemen Motorcycle Club. When a fellow motorcycle club member is assaulted, other club members do not go to the police. They prefer to resolve the situation themselves. The Blues and the Iron Horsemen were rival motorcycle clubs. On the night before the shooting, the national president of the Iron Horsemen was beaten in front of the Blues' clubhouse. The Blues members were afraid the Iron Horsemen might believe the Blues were involved in the beating and take revenge on them. Therefore, the Blues were armed at their clubhouse on the evening of August 17, 1985.

Witnesses Steven Barth and Jerry Overstreet testified they saw several men in black shirts and masks attack the Blues' clubhouse with guns. Barth saw a man wearing a black shirt fire a gun in the direction of the victim, Jim Cox. A gun battle then ensued. Cox was subsequently found outside the clubhouse suffering from gunshot wounds. Witness William Richards saw several men exit a van and walk toward the Blues' clubhouse. He saw a sawed-off shotgun and a ball bat with these men. Shortly thereafter he heard

gun shots. After a few minutes, the men returned and left in the van and another vehicle. One of the men appeared to have been shot in the leg. After the shootout, Cox was taken to the hospital. He suffered from several gunshot wounds and subsequently died from those wounds.

New Albany Police Captain Alan Schroeder arrived on the scene of the shootout and then, with Detective Miller, proceeded to follow a trail of blood away from the scene. In their search, they found a sawed-off shotgun leaning against a house. Co-defendant Sositko was arrested near that house and taken to jail. He had blood on his hands. A van matching the description of the one at the shootout was subsequently stopped by the police and they arrested Defendant Whittle. Blood was found in the van. Co-defendants Pridemore and Dorion were subsequently seen at a hospital for treatment of bullet wounds. Both men claimed they had only been walking down the street when they were shot. Co-defendant Mullins was admitted to the hospital for gunshot wounds. He claimed he had been invited to the Blues' clubhouse for a party and was shot by a person there.

Subsequent to the shooting, on September 6, 1985, Iron Horsemen member David Bergeron was stopped on his motorcycle for a traffic offense following a chase during which he threw away objects. One item he threw away was a pistol which the police recovered. Bergeron testified at trial that, on the night of August 17, 1985, he and all of the men on trial, including Whittle, were at the Blues motorcycle clubhouse and that he had driven the van there. He testified they had been invited to the Blues' clubhouse to discuss the previous night's beating. Other evidence showed there was no telephone in the Blues' clubhouse and no telephone call had been made to the Iron Horsemen for a meeting. Bergeron admitted he went armed but claimed he did not know if anyone else had a weapon. Bergeron also claimed the Iron Horsemen were fired upon as they approached the Blues' clubhouse and that he drove their injured men to a hospital in the van. Found at the shooting scene were spent shotgun shells which were subsequently determined to have been fired from the sawed-off shotgun found near where co-defendant Sositko was arrested.

From this evidence, it is clear that all of the defendants, including Whittle, were present at the Blues clubhouse during the shooting on the night of August 17, 1985. Evidence exists to support the inference that the co-defendants went to the Blues' clubhouse armed and had a motive to avenge the beating of their national president. Two witnesses testified that the approaching Iron Horsemen initiated the gun battle. The conduct of Whittle and the others in going to the Blues' clubhouse at night, armed and masked, and firing at the Blues members outside their clubhouse is evidence of the Iron Horsemen members' intent and agreement. Although there was some conflicting evidence regarding an invitation and a setup, it was for the jury to weigh the evidence and determine the credibility of the witnesses. The jury can believe or disbelieve whomever it chooses. *McBrady v. State* (1984), Ind., 459 N.E.2d 719, 723. Defendants' going to the Blues' clubhouse and shooting at the Blues is an overt act which tends to show a pre-existing conspiracy. Under these circumstances, the agreement may be inferred from the overt acts. The evidence is sufficient to sustain the conviction for conspiracy to commit battery.

## X

 Whittle claims the evidence is insufficient to sustain his conviction for voluntary manslaughter, arguing the evidence does not show he shot the victim. He claims the evidence shows the victim shot first. However, the testimony of witnesses Steven Barth and Jerry Overstreet that the Iron Horsemen initiated the gunfire refutes Bergeron's testimony that the Iron Horsemen were fired on first. Moreover, even if the gunfire had been initiated by the victim, Whittle's claim of self-defense would fail. To prevail on a claim of self-defense, the accused must prove he was in a place he had a right to be, he acted without fault, and he had a reason-

able fear of death or great bodily harm. *Lilly v. State* (1987), Ind., 506 N.E.2d 23, 24. Whittle cannot satisfy these requirements. The evidence shows Whittle and his companions pulled up in a van near the Blues' clubhouse and were seen walking towards the clubhouse with guns and other weapons. The men then attacked the clubhouse. Since their actions precipitated the gunfight, Whittle cannot prevail on his claim of self-defense. Further, as all of the co-defendants acted in concert, it is not necessary the evidence show Whittle actually shot the victim. The acts of one accomplice are imputed to all. *Gage v. State* (1987), Ind., 505 N.E.2d 430, 434; *Johansen v. State* (1986), Ind., 499 N.E.2d 1128, 1132. As a participant in the raid on the Blues' clubhouse, Whittle is responsible for the shooting death of Cox. The evidence is sufficient to sustain his conviction for voluntary manslaughter.

## XI

■ Whittle claims it was error for the prosecutor to explain the verdict forms to the jury during final argument. In the closing argument, the State read through the forms and explained how the verdict forms would be presented to the jury, all without objection from the defense. Because no objection was raised at trial, the alleged error has been waived. *See Estep v. State* (1985), Ind., 486 N.E.2d 492, 495; *Didio v. State* (1984), Ind., 471 N.E.2d 1117, 1122. Moreover, had this issue been preserved for review, it would not present reversible error. Whittle does not claim that the State improperly read the verdict forms. He merely asserts that because the State read the verdict forms in its final argument this somehow clothed the prosecutor with judicial authority. A party may discuss in final argument the instructions the court will give. *Morris v. State* (1979), 270 Ind. 245, 249, 384 N.E.2d 1022, 1025; *Shelby v. State* (1972), 258 Ind. 439, 442, 281 N.E.2d 885, 887. There was no error in the State's reference to the verdict forms here.

## XII

■ Whittle argues that the trial court committed reversible error when it gave evidence to the deliberating jury in Whittle's absence when he did not waive his right to be present. The only evidence showing that Whittle did not waive this right is his post-trial affidavit in which he states:

> That Gerry Barker came to the jail during jury deliberations and stated that the jury wanted to examine certain exhibits, and wanted Affiant's permission. Affiant told Gerry Barker that he wished to be brought into court to see what was transpiring. Affiant never gave permission, but Gerry Barker returned and said they wanted to examine more exhibits. Affiant asked him why Affiant was not brought into court, and Mr. Barker stated that the judge would not permit Affiant back into court until the jury reached its verdict.

*Record* at 82.

The trial record shows that when the jury requested to view the two exhibits, the trial judge inquired whether there was any objection. Co-defendants Mullins and Sositko were present in court at this time with the defense attorney. Whittle and the other two co-defendants were not present. Defense counsel stated to the trial court that he had interviewed the co-defendants, including the three not present, and that none of them had any objection to the jury's use of the exhibits. Thus, defense counsel represented to the court that he had discussed the situation with all defendants and that all had consented to the court providing the jury with the two exhibits.

Where there is a conflict in the evidence, this Court on review will look only to the evidence most favorable to the verdict below and all reasonable inferences to be drawn therefrom. *Loyd v. State* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied* (1980), 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. Notice of the communication to counsel constitutes notice to the client. *Reynolds v. State* (1984), Ind., 463 N.E.2d 1087, 1088. As defense counsel agreed to allow the jury to use the exhibits

and did not object to the communication without Whittle's presence, any alleged error has been waived. *See Rhinehardt v. State* (1985), Ind., 477 N.E.2d 89, 94; *Reynolds v. State* (1984), Ind., 460 N.E.2d 506, 508–09.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER and GIVAN, JJ., concur.

DICKSON, J., concurs in result without opinion.