Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jun 30 2014, 10:09 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**DEIDRE R. ELTZROTH**
Assistant Chief Deputy Public Defender

**EMILY J. WITNEY**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANISSA L. TYLER, | ) | |
| | ) | |
| Appellant-Petioner, | ) | |
| | ) | |
| vs. | ) | No. 48A04-1309-PC-428 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Thomas Newman, Judge
Cause No. 48D03-1002-PC-00039

**June 30, 2014**

### MEMORANDUM DECISION – NOT FOR PUBLICATION

**MATHIAS, Judge**

Anissa Tyler ("Tyler") was convicted in Madison Circuit Court of murder and Class A felony aiding, inducing, or causing robbery and sentenced to an aggregate term of sixty years in the Department of Correction. After her convictions and sentence were upheld on direct appeal, Tyler filed a petition for post-conviction relief, which the post-conviction court denied. Tyler presents three issues in her appeal of the post-conviction court's denial of her petition for post-conviction relief, but we address a single dispositive issue, namely, whether Tyler was denied the effective assistance of trial counsel because counsel's performance was impaired by a conflict of interest.

We reverse and remand.

**Facts and Procedural History**

On April 13, 2006, the body of Charles Robinette ("Robinette") was found inside his apartment in Anderson, Indiana. He had apparently been dead for a few days at the time of the discovery. The cause of death was determined to be blunt force trauma to the head. Police investigating the scene interviewed Robinette's neighbors and, based on those conversations, began looking for a white male, approximately forty to fifty years old, with dark, frizzy hair.

While leaving Robinette's apartment complex after investigating the crime scene, a police officer pulled behind a vehicle with two people inside and noticed that the driver of the car, later identified as Jeff Miller ("Miller") matched the description provided by Robinette's neighbors. After running the car's license plate and learning that the car was registered to Tracy Cripe, Miller's sister and a person of interest in the investigation of Robinette's death, officers pulled over the vehicle and arrested Miller. Miller then took

the officers to a local motel at which Tyler, who had also been identified as a person of interest in Robinette's death, was staying at the time. Officers brought both Miller and Tyler to the Anderson Police Department for questioning. During a videotaped interview, Tyler denied any direct involvement with Robinette's death. After the questioning, the officers arrested Tyler.

On April 19, 2006, the State charged Tyler with Count I, Murder and Count II, Class A felony aiding, inducing, or causing robbery. On April 26, 2006, one week after the State filed its charges against Tyler, Ms. Gregory Hiawatha Deloris Mann ("Mann") was arrested for possession of cocaine and possession of drug paraphernalia. Mann was placed in the same cellblock as Tyler. Attorney Blanchard Shearer ("Shearer") was appointed to represent Mann. On May 10, 2006, Mann filed a *pro se* request for bond reduction, which was refused by the trial court. Then, in mid-May 2006, approximately one week after the trial court denied Mann's request for bond reduction, Mann approached police, claiming that Tyler had confessed to Robinette's murder to her.

A videotape of a May 25, 2006 meeting between Mann and the detective who was working on Tyler's case portrays the detective advising Mann that the prosecutor would be notified of Mann's cooperation and that her bond would be reduced or she would be released from jail. Chronological case summaries ("CCSs") for the two drug-related criminal prosecutions pending against Mann at the time she became an informant indicate that on June 1, 2006, Mann's bond was reduced and, approximately one week after that, Mann was released. On October 16, 2006, the State dismissed one of Mann's two pending criminal cases. Some three months later, on January 12, 2007, Mann's attorney,

3

Shearer, was appointed to represent Tyler. Five days after his appointment to represent Tyler, Shearer was removed as Mann's counsel.

On February 2, 2007, the State moved to amend the date of the offenses listed on Tyler's charging information. Over Tyler's objection, the trial court granted the State's motion. Tyler's jury trial began approximately two months later, on April 24, 2007. At trial, Anderson Police Detective Larry Crenshaw ("Detective Crenshaw") testified that he conducted two videotaped interviews of Tyler. He stated that, during the second interview, he removed Tyler from the interrogation room into the adjacent hallway and continued to question her. He testified that while he and Tyler were in the hallway, she confessed that Robinette's death was the result of a botched robbery for which she was a "lookout." Tr. p. 422. Crenshaw stated that, following this confession, he took Tyler to a second room to record her confession, but there, Tyler again denied any participation in Robinette's death.

Mann also testified for the State. When Shearer learned that Mann, his former client, was testifying as an informant for the State, he asked his co-counsel, Jason Childers ("Childers"), to conduct the cross-examination of Mann. During direct examination, Mann stated that Tyler told her that Tyler and another woman, Jana Brandle, were with Miller at Robinette's apartment smoking cocaine on the night of Robinette's death. Mann testified that Tyler told her that Miller killed Robinette after the group ran out of cocaine and Robinette refused to give Miller money to buy more drugs.

During Childers's cross-examination of Mann, the following exchange occurred:

4

Childers: Ms. Mann again, when you made these statements to [the police], [it] was at [your] request, correct?

Mann: Yes sir it was.

Childers: And it's your testimony today that you did not receive any favorable treatment…

Mann: No sir I didn't.

Childers: So you volunteered those comments out of your own part?

Mann: I have a family member that was murdered. My uncle was murdered. And he was a good man and there was no real justice, we've never had closure.

Childers: No further questions.

Later, during an argument outside jury's presence, the following exchange occurred between Shearer and the trial court:

Shearer: Ah, Ms. Mann testified that she received no favorable treatment from the State of Indiana but ah, the docket sheets show that ah, in one case she had a bond reduced from Ten Thousand ($10,000) Two Thousand (2000) [sic] to O.R. and the other case was dismissed. All in June about the time of year she was working with the ah, as an informant in the jail for the State. My problem is and I've disclosed this to the Court and I've disclosed this to you, that ah, I was Gregory Hiawitha Mann's public defender down in County Court and I was concerned about a conflict early on in the case. That's why I had Jason Childers [cross-examine] her rather than me. But ah, I personally know what the deal was downstairs and why her bond was reduced to O.R. Ah, I can't testify to that and I don't know if that creates such a conflict for me that I should…."

Trial court: Well, does the prosecutor who was on the other side of the case know?

Shearer: Yes, but the prosecutor on the other side of the case is no longer here.

* * *

5

Trial court: Well, did Mr. Childers cross-examine her on what's reflected in the docket sheet?

Childers: I didn't, Judge. I think my question to her ah, was…

Prosecutor: Was did [sic] you come forward and she said because I had an Uncle killed and the murder wasn't solved. That was the question and the answer.

Childers: Yeah, and I think I asked, you know, how many other times have you been an informant, I think is the [g]ist of it. I believe her answer was no.

Trial court: You had this information at the time you cross-examined her?

Prosecutor: And that's my problem with it.

Trial court: Didn't you?

Childers: Yeah.

Trial court: Well, why didn't you [cross-examine] her? Mr. Shearer knew about it.

Childers: I know, well I guess I accomplished what I wanted to accomplish with her.

Tr. pp. 1202-03.

During this conversation, Shearer attempted to admit the CCSs from Mann's two criminal cases. The State objected[1] and the trial court sustained the objection.

During closing arguments, the State proclaimed:

And remember, [Mann] came to us. We didn't go seeking her. She sent word to law enforcement that she knew something about this. She didn't

---

[1] The State argued, "[The CCSs don't] say anything about any deals or any leniencies. She testified that she was O.R.'d. She testified that she, she said she beat the other case and it was dismissed or whatever. And again, they didn't ask her and the problem is that they're in putting these Two (2) . . . docket sheets in and then their argument is, well these show that she had a bias and then when they see that Mr. Shearer was her attorney, they're going to assume he had some personal knowledge, which there's no evidence that he had any personal knowledge of what happened in these cases." Tr. p. 1208.

get anything in return and when they asked her, when they asked her why you were doing this, she told you. I had an Uncle that was murdered and it was never solved. That's why I did this.

Tr. p. 1292.

The jury found Tyler to be guilty as charged. On July 23, 2007, the trial court sentenced Tyler to sixty years in the Department of Correction on Count I and forty-five years on Count II, to be served concurrently. Tyler filed a direct appeal, challenging the trial court's amendment of the charging information and claiming that the sentence imposed by the trial court was inappropriate. Another panel of this court affirmed, and our supreme court denied transfer.

On February 1, 2010, Tyler filed a *pro se* petition for post-conviction relief. Approximately two and one half years later, on October 10, 2012, Tyler, by counsel, filed an amended petition for post-conviction relief, arguing that she received ineffective assistance of trial counsel and ineffective assistance of appellate counsel.

The post-conviction court held a hearing on February 19, 2013. At the hearing, the following exchange occurred between Shearer and Tyler's post-conviction defense counsel:

Counsel: Are you familiar with women named Gregory Hiawatha Delores Mann?

Shearer: Yes.

Counsel: How are you familiar with Ms. Mann?

Shearer: When I was downstairs, before I came up here, I had represented her in Judge Hopper's case. And the prosecutor came to me in that case and said that she was a witness in a murder case and that I can't—I don't that she was going to let her out on bond or something like that and work

7

with her and did I have any objections and I said I didn't. I didn't know anything—she wouldn't tell me what case it was or—I had know [sic] I idea [sic] what she was talking about. It's just that I had a client that was going to cooperate and for that cooperation there was going to be something. I mean, she apparently got out of jail—and I don't know what other things come of that. That was—then I was transferred upstairs, so I was out of that case, so I don't know what happened to it.

\* \* \*

Counsel: At what point during your representation of [Tyler] did you realize Ms. Mann [had] received a deal in the case you were representing her on?

Shearer: I don't know, sometime during the case, the two things clicked, her name and what was going on and she was testifying against [Tyler], which I became aware that I certainly had a conflict at that point. And I notified Judge Newman that I thought I had [a] conflict. And of course this was after a week of testimony or so. So, we were well into the trial. And we had to make some decisions on how we were going to handle that type of situation.

Counsel: Was there any discussion about you withdrawing on the case?

Shearer: Well yes. There was some discussion. I offered to withdraw from the case because of my conflict. But that would've just left [Childers] who I don't think had much experience at that time trying criminal cases. So that really wasn't an alternative. I believe the compromise was made that [Childers] would [cross-examine] Ms. Mann and I would not participate in that.

Counsel: Do you remember if you informed [Tyler] that there was a conflict?

Shearer: Well, I don't know if I informed her. She was in court when I informed the Court. I don't know if I informed her ahead of time or not. I probably did because when I realized what was happening, you know, I think I informed [Childers] and I informed maybe [Tyler] that you know that I might have to withdraw.

Counsel: Do you remember if she waived the conflict?

Shearer: No, I don't.

8

P.C.R. Tr. pp. 29-31.

The following exchange occurred between Childers and Tyler's defense counsel:

Counsel: Do you recall whether you reviewed any videotaped statements made by Ms. Mann?

Childers: I don't remember if I did or not. It's possible, but I don't remember that.

Counsel: Did you view her chronological case summaries, do you remember?

Childers: Oh, I'm sure I did.

Counsel: Ms. Mann's?

Childers: Ms. Mann's, yeah, because again a lot of it was, what did Ms. Mann hear while in jail, so obviously I was curious why she's in jail and how that could perhaps be used to examine her credibility.

Counsel: Were you aware, prior to the trial, that Mr. Shearer had previously represented Ms. Mann?

Childers: Prior to trial, I don't think I knew that.

Counsel: Did you know at the time of her testimony that Ms. Mann had received a deal for her cooperation?

Childers: I don't recall—I don't recall. And I don't know if I addressed that on [cross-examination] or not. I don't recall that.

Counsel: Do you know at the time of her testimony whether she previously acted—whether Ms. Mann previously acted as a confidential informant?

Childers: No, I don't recall that, either.

Counsel: If you had—would those had [sic] been things you would've asked her about if you knew about them ahead of time?

Childers: Well, I mean potentially, but when you get into confidential informant situations, you certainly have to be careful and you get into

9

judicial discretion on what can be revealed and what not when it comes to confidentiality and their identity in another case. You have to be careful there, so, I can't say that that's an automatic. It would be something we'd have to discuss with the Court and try to make sure that that was safe to do.

P.C.R. Tr. pp. 9-10.

On August 9, 2013, the post-conviction court issued its findings of fact and conclusions of law denying Tyler's petition for post-conviction relief. The court's order provided, in relevant part:

> 11. Petitioner has failed to prove that Mr. Shearer or Childers provided ineffective assistance by not objecting to the apparent conflict that Mr. Shearer had with Ms. Mann. Mr. Shearer testified that he informed the Court that he had previously represented the witness Mann, and that he had been removed from her case on January 17, 2007 and new counsel appointed for her. It was decided that [co-counsel] Mr. Childers would conduct the cross-examination. Petitioner has not proved any prejudice by having Mr. Childers perform the [cross-examination]. Petitioner has failed to prove that Mr. Shearer or Mr. Childers performed deficiently, resulting in prejudice, she has failed to prove that Mr. Shearer or Mr. Childers provided ineffective assistance with respect to failing to object to the conflict.
>
> 12. Petitioner failed to prove that Mr. Childers provided ineffective assistance by failing to properly [cross-examine] Ms. Mann. Petitioner did not offer any proof to rebut the strong presumption that Mr. Childers provided effective assistance. Mr. Childers had adequate time to prepare his [cross-examination] and crossed Ms. Mann's credibility and the accuracy of her testimony. Mr. Childers felt he elicited all the information that the wanted to get out of Ms. Mann and that the cross was successful. Because Petitioner has failed to prove that Mr. Childers or Mr. Shearer performed deficiently, resulting in prejudice, she has failed to prove that Mr. Childers provided ineffective assistance with respect to her allegation of failing to properly [cross-examine] a witness.

Appellant's P.C.R. App. pp. 94-95. (internal citations omitted).

Tyler now appeals the post-conviction court's denial of her petition for post-conviction relief.

## Standard of Review

Post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. McCary v. State, 761 N.E.2d 389, 391 (Ind. 2002). Rather, post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. Davidson v. State, 763 N.E.2d 441, 443 (Ind. 2002). A post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. Henley v. State, 881 N.E.2d 639, 643 (Ind. 2008). On appeal from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Id. To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Id. at 643-44.

Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we do not defer to the court's legal conclusions, but "the findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." Id. at 644.

## Discussion and Decision

Tyler argues that she was denied the effective assistance of trial counsel because Shearer's assistance was impaired by a conflict, namely his prior representation of the State's informant, Mann, in another criminal case.

11

Our supreme court summarized the law regarding claims of ineffective assistance

of trial counsel in Timberlake v. State as follows:

> A defendant claiming a violation of the right to effective assistance of counsel must establish the two components set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. The Strickland Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. The two prongs of the Strickland test are separate and independent inquiries. Thus, [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed.

753 N.E.2d 591, 603 (Ind. 2001) (citations and quotations omitted).

A criminal defendant's Sixth Amendment right to effective assistance of counsel

includes the right to conflict-free representation. Tate v. State, 515 N.E.2d 1145, 1146

(Ind. Ct. App. 1987), trans. denied. To establish a deprivation of the right to counsel due

to a conflict, a defendant who failed to raise the objection at trial must demonstrate that

trial counsel had an actual conflict of interest and that the conflict adversely affected

counsel's performance. Id. To demonstrate an adverse effect on performance caused by

12

counsel's failure to act, the defendant must show that "(1) a plausible strategy or tactic that was not followed but might have been pursued; and (2) an inconsistency between that strategy or tactic and counsel's other loyalties, or that the alternate strategy or tactic was not undertaken due to the conflict." Woods v. State, 701 N.E.2d 1208, 1223 (Ind. 1998). Once a defendant has demonstrated an actual conflict and an adverse effect on his lawyer's performance, the prejudice prong of an ineffective assistance claim is presumed. Id. The mere possibility of a conflict, however, is not sufficient to impugn a criminal conviction. Davidson v. State, 558 N.E.2d 1077 (Ind. 1990).

Tyler argues that Shearer "provided ineffective assistance when he failed to withdraw after learning he had a conflict of interest because he previously represented Mann." Appellant's Br. at 6. She claims that Shearer's conflict prejudiced her because Childers, Shearer's co-counsel, did not impeach Mann at all on cross-examination when Mann claimed that she was testifying "for altruistic reasons." Id. We agree.

Tyler's trial counsel's performance was adversely affected by the presence of actual conflict, which prevented trial counsel from impeaching Mann's credibility by cross-examining her as to her pending drug charges and subsequent reduction in bond and release. The facts of this case are similar to those in Tate v. State, 515 N.E.2d 1145 (Ind. Ct. App. 1987), where another panel of this court reversed the convictions of two co-defendants, concluding that an actual conflict of interest existed between codefendants in a prosecution for the theft of groceries, where one co-defendant proclaimed his own innocence by suggesting that it was the other co-defendant who stole the groceries. The court held that, once the conflict arose, performance of joint counsel was impaired as to

13

both co-defendants by their counsel's continued active representation, because counsel was precluded from cross-examining witnesses on behalf of each of the co-defendants. Therefore, we conclude that Tyler has established that an actual conflict of interest existed.

Furthermore, because Mann's credibility was of great consequence to the jury's consideration of this case, we cannot agree with the post-conviction court that Tyler was not prejudiced, especially in light of the prosecutor's apparently inaccurate comment during closing argument that Mann had no ulterior motives in testifying against Tyler. "'Cross-examination is the principal means by which the believability of the witness and the truth of [her] testimony are tested.'" Coates v. State, 534 N.E.2d 1087, 1095 (Ind. 1989) (quoting Davis v. Alaska, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)); see also Murray v. State, 761 N.E.2d 406, 408 (Ind. 2002) (linking cross-examination regarding witness's plea agreement to jury's task of resolving conflicts in the evidence and determining witness credibility). If, through a vigorous and thorough cross-examination by trial counsel, Mann's credibility had been seriously challenged and perhaps even undermined by the admission of evidence regarding Mann's bond reduction, release, and dismissal of one of her pending cases subsequent to her becoming an informant, we believe there is a reasonable probability that the results of the proceeding would have been different.

Allowing Mann, to testify unchallenged that she acted as an informant for purely altruistic reasons resulted in clear prejudice to Tyler and, as a result, a verdict that was not fairly reached. It is apparent to us that this failure was not a matter of a trial strategy,

14

but, rather, a matter of Shearer's failure to withdraw when he learned of the conflict and Childers's inadequate cross-examination. The trial transcript makes clear that Shearer had personal knowledge of Mann's deal. Tr. pp. 1202-03. When, during Tyler's trial, Shearer attempted to enter into evidence the CCSs showing that Mann received favorable treatment after becoming an informant for the State, the State objected, stating "when [the jury sees] that Mr. Shearer was [Mann's] attorney, they're going to assume he had some personal knowledge." Tr. p. 1208. The trial court sustained the State's objection. The fact that the CCSs were not admitted caused prejudice to Tyler, and it was because of Shearer's prior representation of Mann that the trial court refused to admit the evidence.

Shearer's prior representation of Mann also prevented him from cross-examining Mann. He instead relied upon co-counsel Childers, but Childers did not even attempt to challenge Mann when she claimed that she received no consideration from the prosecutor for her testimony, despite having access to a videotaped interview and CCSs which clearly indicated otherwise. See Shepherd v. State, 924 N.E.2d 1274, 1288-89 (Ind. Ct. App. 2010) (holding that defendant received ineffective assistance of trial counsel where trial counsel's assistance was adversely affected by an actual conflict of interest where counsel also represented defendant's girlfriend, who testified for the State against defendant; girlfriend's testimony was directly related to possession of the cocaine; and girlfriend's credibility was an important factor for the jury's consideration); Smith v. State, 721 N.E.2d 213, 219 (Ind. 1999) (holding that "[b]ecause [the witness]'s testimony was essential to the State's case . . . we cannot conclude that this restriction on exploring [the witness]'s bias was harmless beyond a reasonable doubt"); Newman v. State, 263

15

Ind. 569, 571-572, 574, 334 N.E.2d 684, 686-688 (1975) (holding that the prosecution's nondisclosure of evidence regarding an agreement of leniency made with a prosecution witness, an accomplice of the defendant, constituted reversible error); Hall v. United States, 371 F.3d 969 (7th Cir. 2004) (concluding that defendant was entitled to an evidentiary hearing on his claim that he was denied effective assistance of counsel based on his trial counsel's conflict of interest, arising from counsel's previous representation of informant who had allegedly provided to FBI agents information about co-conspirator's drug-distribution activities at federal prison, where defendant could establish that counsel's conflict of interest affected adequacy of representation if he could show that counsel neglected preparation for trial while pressuring him to plead guilty because of conflicting interest).

Because Tyler has established an actual conflict and an adverse effect on her trial counsel's performance, the prejudice prong of her ineffective assistance claim is presumed. See Woods, 701 N.E.2d at 1223. Accordingly, under the facts and circumstances before us, we hold that the post-conviction court erred in finding that Tyler did not receive ineffective assistance of trial counsel.

**Conclusion**

For all of these reasons, we conclude that the post-conviction court erred in determining that Tyler received effective assistance of trial counsel. We reverse the judgment of the post-conviction court, vacate Tyler's convictions for murder and Class A felony aiding, inducing, or causing robbery, and remand this cause for retrial.

Reversed.

16

BRADFORD, J., concurs with separate opinion.

ROBB, J., dissents in part and concurs in result in part with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

ANISSA L. TYLER,                          )
                                          )
    Appellant-Petitioner,             )
                                          )
        vs.                       )          No. 48A04-1309-PC-428
                                          )
STATE OF INDIANA,                         )
                                          )
    Appellee-Respondent.              )

**BRADFORD, Judge, concurring.**

I concur with the majority that the post-conviction court erred in denying Tyler's petition for post-conviction relief. However, I write separately to reiterate that while it is well-established that this court does not reweigh the evidence presented before the post-conviction court on review, in light of the particular facts presented in the instant matter, I believe that the only reasonable inference that can gleaned from the record is that Tyler's trial counsel rendered ineffective assistance and that Tyler was prejudiced by trial counsel's ineffective assistance.

During trial, Mann testified on behalf of the State about statements that she claimed were made by Tyler which indicated that Tyler participated in the underlying crimes. The undisputed facts demonstrate that prior to or during trial, Attorney Shearer recognized a conflict of interest between his representation of Tyler and his former

18

representation of Mann. Attorney Shearer indicated that he considered withdrawing from his position as Tyler's trial counsel but ultimately determined that withdrawal was not necessary.

In light of his conflict of interest, Attorney Shearer decided not to participate in the defense's cross-examination of Mann, instead allowing his co-counsel, Attorney Childers, to cross-examine Mann. However, for some unknown reason, Attorney Childers did not challenge Mann's credibility by questioning her about the benefit that she received, *i.e.*, release from prison and the dismissal of a felony charge, after she spoke with detectives regarding Tyler's alleged involvement in the underlying criminal acts despite the fact that it is undisputed that defense counsel was aware of the benefit Mann received. When asked during post-conviction proceedings why he didn't challenge Mann's credibility by questioning her specifically about the benefit she received, Attorney Childers merely stated: "well, I guess I accomplished what I wanted to accomplish with her." PCR Tr. p. 1205. The failure to question Mann about the benefit she received leads to a reasonable inference that Tyler was prejudiced by the acts of trial counsel. Further, while perhaps problematic for the conclusion of this particular trial and insufficient to remove the prejudice suffered by Tyler, it very well may have been the better course of action for Attorney Shearer to withdraw from his representation of Tyler and to testify as an impeachment witness following Mann's testimony.

Moreover, it is important to note that the State does not argue and the record does not support a determination that the ineffective assistance of Tyler's trial counsel was harmless in light of other evidence of Tyler's guilt. Thus, because Tyler was prejudiced

19

by the ineffective assistance rendered by her trial counsel, I agree with the majority that the post-conviction court erred in denying Tyler's request for post-conviction relief.

IN THE
COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANISSA L. TYLER, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 48A04-1309-PC-428 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

**ROBB, Judge, dissenting in part, concurring in result in part.**

I respectfully dissent from the majority's conclusion that the post-conviction court erred in denying Tyler's petition for post-conviction relief because Shearer's representation of her was impaired by a conflict of interest. I do not believe there is a reasonable probability Shearer's withdrawal as her attorney when the trial was already underway would have led to a different result. However, I do believe that Childers provided ineffective assistance to Tyler in failing to adequately cross examine a key State's witness. Therefore, I agree with the majority's ultimate conclusion that the post-conviction court erred in denying Tyler's petition for relief, and I respectfully concur in result.

Tyler's amended petition for post-conviction relief alleged that she was represented by Shearer and Childers and that her counsel, jointly and individually, performed deficiently and caused prejudice by failing to object to an actual conflict of

interest and failing to properly cross-examine and discover/present evidence that would have impeached a witness's credibility. The post-conviction court found no ineffective assistance by Shearer or Childers with regard to the conflict of interest and no ineffective assistance by Childers with regard to his cross-examination of the witness. I agree with the majority that Shearer's previous representation of Mann created an actual conflict of interest with respect to his representation of Tyler. See slip op. at 14. I also agree that there is a reasonable probability that the result of the proceeding would have been different if Mann's credibility had been seriously challenged. See id. However, I do not believe there is as direct a correlation between the two as the majority does. The majority focuses on Shearer's failure to withdraw as the primary cause of prejudice to Tyler, and although I acknowledge the difficulties posed by Shearer's involvement in Tyler's case, I would place the responsibility for the wrong impression the jury likely had of Mann and her testimony on Childers's shoulders for his handling of the cross-examination of her.

It seems clear that Shearer did not realize his previous representation of Mann had implications for Tyler's case until after Tyler's trial had started and there is no particular indication that he should have realized it earlier. It also seems clear he told the court of his conflict, and he considered withdrawing from the case but felt leaving Childers as the sole attorney was not a good option because he was inexperienced. Shearer therefore remained on the case but asked Childers to cross examine Mann. The concurring opinion opines that the better option may have been for Shearer to withdraw and testify as an impeachment witness. But regardless of whether or not Shearer withdrew, he could not use or share his knowledge of what had transpired in Mann's earlier cases either with

22

Childers or with the jury without breaching confidentiality and disclosing information he gained through his representation of Mann to Mann's possible detriment. He could not withdraw and then tell Childers what he knew. And even if he had never been involved in Tyler's case, he still could not have told Childers or any other attorney who might have been representing Tyler what he knew. Thus, although Shearer's prior representation of Mann was problematic, his withdrawal would not have cured the problem, and I disagree with the majority opinion to the extent it find prejudice based primarily on Shearer's failure to withdraw.[2]

Childers admitted he had all the tools any other attorney who had no personal knowledge of Mann's prior history would have had: her videotaped statement to police during which she was advised the prosecutor would be informed of her cooperation and the chronological case summaries of her earlier cases showing that her bond was reduced and she was released from jail within one month of having been previously denied a bond reduction and within one week of speaking with police and also showing that one of her pending cases was ultimately dismissed. Childers testified on post-conviction that he could not recall whether he reviewed the videotaped statements but was "sure" he did review the chronological case summaries. But he clearly did not press Mann on cross-examination about how those materials conflicted with her stated reason for offering information and testimony about Tyler. Shearer was a direct—but unusable in any circumstance—source of information about Mann's deal, but the available materials,

---

[2] The majority does discuss Childers's cross examination of Mann, but within the context of Childers having to conduct the cross examination because Shearer's conflict prevented him from conducting the cross examination himself. See slip op. at 15.

23

employed properly, could also have raised an inference of the same. It was Childers's failure to thoroughly review or properly utilize those materials that led to the jury receiving an inaccurate picture of Mann's credibility.

Accordingly, I agree with the post-conviction court's finding that Tyler failed to prove that Shearer or Childers provided ineffective assistance for how they handled Shearer's conflict, and I therefore dissent from the majority opinion deciding otherwise. However, I disagree with the post-conviction court's finding that Tyler also failed to prove Childers provided ineffective assistance in his cross examination of Mann. I therefore concur with the majority's ultimate result that Tyler's post-conviction petition should have been granted.